COE, ET AL. *v.* THE SUBURBAN LIGHT & POWER CO.

(Decided January 18, 1929.)

*Messrs. Blair & Blair,* for plaintiffs in error.
*Mr. H. C. Devin,* for defendant in error.

Houck, J.   This lawsuit grows out of a written contract between plaintiffs and defendant, by the terms of which plaintiffs, Edward Coe and others, claim the sum of $120 for eight electric light poles erected on their lands.

The cause was submitted to the trial judge on an agreed statement of facts, without the intervention of a jury, and judgment was entered in favor of defendant and against the plaintiffs. This judgment is sought to be reversed here by the plaintiffs.

The legal rights of the parties to this controversy must be determined upon the proper construction of the following clause in the contract:

"Provided, however, that said Suburban Power Company, its successors or assigns, shall further

pay to us or our heirs or assigns, the sum of Fifteen Dollars for each pole erected on open land, whenever and as soon as line is erected.''

The facts show that the poles for which payment is sought are upon the public highway and that plaintiffs own the land on both sides of the road on which said poles are erected.

Question: Under the above-quoted clause are plaintiffs entitled to recover?

This brings us to the real question for solution: Is a public highway, under the facts in this case, ''open land?''

The proper rule in the interpretation of contracts is to ascertain the intention of the parties, and to give effect to that intention, if it can be done consistently with legal principles.

Parties to a contract should be bound for what they intended to be bound for, and no more.

The intention of the parties to a contract is to be gathered not from particular words and phrases, but from the entire language used in the agreement, if it can be done. Words, phrases, and sentences in a contract must be given their usual and ordinary meaning, and contradictions must be harmonized, if possible. The grammatical and ordinary sense of the words and phrases used in a contract must be followed, unless that would lead to some manifest absurdity, repugnance or inconsistency.

It is conceded that the expression ''open land'' is ambiguous. There are two kinds of ambiguities, patent and latent. The former is an uncertainty that arises at once on the reading of a written instrument. We do not have to wait until some fact is brought to our knowledge before the uncertainty is

apparent, but the doubt is suggested at once. The present inquiry concerns a patent ambiguity; the words in question coming clearly within the definition just given of a patent ambiguity.

Upon the first inquiry as to the meaning of "open land," one must and does stop, think, and reflect, and the longer he does so the more in doubt he becomes as to the true, proper, and correct legal meaning of this term.

It has no common or accepted meaning and no judicial interpretation has been made of it. No evidence was offered as to what the parties to the contract understood or intended by this phrase at the time of the making of the contract now before us for interpretation and construction.

Learned counsel in their oral arguments and written briefs have passed this important question on to the court for its determination, having cited no authority in point, and they designate this as the pioneer case for a judicial determination of what in law the words "open land" mean, and what their proper force and effect are as bearing upon the rights of the parties to this contract.

Courts are not authorized to make for parties contracts which they did not make for themselves, and especially is this true in the case at bar, where the court is asked to resolve an ambiguity in the absence of any evidence of what the parties themselves understood, and in the absence of any ordinary meaning or common acceptation attaching to such ambiguous phrase.

This court has nothing before it to determine the meaning of the phrase "open land," except the rival claims of counsel. Plaintiffs contend that these

poles erected on the public highway are on their land and come within the term and meaning of "open land." Defendant insists that "open land" means land other than that within the highway, to wit, arable and tillable, free from woods, etc.

Counsel for defendant in his written brief says: "I admit that the choice of the words 'open land' may have been unfortunate. It is easy to see that it has probably been the occasion of this litigation, but since the words are in the contract, it is apparent that the court must do the best possible to get at their reasonable meaning."

It therefore follows that this court is called upon to simply make a guess for the purpose of determining the disputed legal rights of the parties to this suit based upon an ambiguous phrase, which was placed in the printed contract form by the defendant. This we feel is not one of the duties of a court under the facts and circumstances of this case.

In view of the facts, we hold that a written contract like the one before us should, in case of doubt, be interpreted against the party who drew it. And where doubt exists as to the proper construction of words, phrases, or clauses, or of the instrument itself, which instrument was prepared by one of the parties thereto, upon which the other party has acted or incurred an obligation, that construction must and will be adopted which will be favorable to the latter. In other words, everything is to be taken most strongly against the party who prepared the contract—the one who, in the absence of proof to the contrary, created the doubt, which in this case is the defendant. He who speaks in a written con-

tract prepared by himself should speak plainly and, failing to do so, must abide the natural and legal results of such failure.

The following cases and authorities, we think, are in full accord with what we have already said and are decisive of this case in favor of the plaintiffs:

"If it be left in doubt, in view of the terms of the instrument and the relation of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction will be adopted which is most beneficial to the promisee." *Webster* v. *Dwelling House Ins. Co.*, 53 Ohio St., 558, 42 N. E., 546, 30 L. R. A., 719, 53 Am. St. Rep., 658.

"Where the language of a contract is of doubtful import, it is proper to ascertain the circumstances which surrounded the parties at the time it was made, the object intended to be accomplished, and the construction which the acts of the parties show they gave to their agreement, in order to give proper construction to the words they have used in the instrument, and to determine its legal effect." *Mosier* v. *Parry*, 60 Ohio St., 388, 54 N. E., 364.

"Where a person or corporation engaged in a particular line of business with the public, prepares or uses printed forms of contract for the purpose of effecting and carrying on that business, and places in such printed form of contract a printed condition of doubtful meaning susceptible of two or more constructions, that construction will be adopted most favorable to those dealing with the person or corporation that prepares or uses the printed form in the conduct of its business." *Farmers' Natl. Bank* v. *Ins. Co.*, 83 Ohio St., 309, 94 N. E., 834. See, also,

*Mumaw* v. *Western & Southern Life Ins. Co.,* 97 Ohio St., 1, 119 N. E., 132, and 6 Ruling Case Law, Section 242.

Further comment seems unnecessary, except to say that we are of the unanimous opinion that the judgment of the common pleas court should be reversed.

*Judgment reversed, and judgment for plaintiffs in error.*

SHIELDS and LEMERT, JJ., concur.