**CLINE, Appellee,**

v.

**ROSE et al., Appellants.**

[Cite as *Cline v. Rose* (1994), 96 Ohio App.3d 611.]

Court of Appeals of Ohio,
Seneca County.

No. 13–94–4.

Decided Aug. 31, 1994.

· *Drew A. Hanna,* for appellants.

*Arthur F. Graham,* for appellee.

EVANS, Judge.

This is an appeal by the defendants and appellants, Norman and Patrick Rose, from a judgment of the Court of Common Pleas of Seneca County granting the plaintiff's complaint for specific performance of a contract for the sale of real estate.

Appellants were the co-owners of Rose Motors, a Cadillac/Oldsmobile dealership, which they agreed to sell in 1987 to James Cline, appellee. Since appellee was unable to raise the entire amount of the purchase price for the dealership and the real estate belonging to the business, appellants agreed to permit appellee to lease the real estate for five years with an option to purchase when the lease expired. Appellants' attorney drafted the relevant documents, which were signed by all the parties.

The provision in the sales contract for determining the price, which the court found ambiguous, states as follows:

"6. Purchaser shall lease the buildings and real estate located at 1950 W. State Route 18, in the City of Tiffin, Seneca County, Ohio, 44883, from Patrick Rose and J. Norman Rose, individually, for the sum of Four Thousand and no/100 Dollars ($4000.00) per calendar month for a term of Five (5) years. Upon the expiration of said five (5) year term, said real estate shall be reappraised by a reputable appraiser agreed upon by the above named parties. Purchaser shall receive a credit for all lease payments made toward the purchase of said real estate[;] however, said real estate shall not be sold for less than Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00)."

Additionally, the actual lease agreement between the parties for the lease of the premises referred to in the above-quoted contract provides as follows:

" * * * Lessor does hereby agree to lease to Lessee and Lessee does hereby agree to lease from Lessor the real estate located at 1950 West State Route 18, in the City of Tiffin, Seneca county, Ohio, 44883, to be used and occupied by Lessee, operating an Oldsmobile–Cadillac franchise for a term of Five (5) Years, beginning in the month in which said franchise opens for business, with an option to purchase said real estate upon expiration of said term, as which time said real estate shall be reappraised by a reputable appraiser agreed upon by Lessor and Lessee. Should Lessee purchase said real estate, Lessee shall receive a credit for all lease payments made toward the purchase of said real estate[;] however, said real estate shall not be sold for less than Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00). * * * "

On February 15, 1993 appellee notified appellants in writing that he wished to exercise his option to purchase the leased real estate. Negotiations deteriorated

between the parties soon thereafter when they disagreed upon the purchase price, which obviously had not been clearly specified in the lease. Fearing that appellants would attempt to evict him when the lease expired on May 3, 1993, appellee filed a complaint for declaratory judgment in the Court of Common Pleas of Seneca County, requesting the court to determine the meaning of the relevant contract language, and to order the sale of the property to take place. Appellee also moved for a preliminary injunction to prevent appellants from selling or leasing the property to another, and requested the court to assist the parties in choosing an appraiser. The court granted the injunctive relief requested, and ordered appellee to continue paying rent until the contract dispute was resolved.

In July 1993, the parties were finally able to agree upon and choose an appraiser. The real estate was appraised in September 1993, at $325,000. However, the parties continued to disagree on the purchase price, as well as other issues that arose due to the unartful drafting of the contract.

On December 30, 1993, following a four-day trial, the trial court granted appellee's request for specific performance, ordering appellee to pay appellants $85,000 for the property, as the difference between the $240,000 rental payment credit and the new appraisal value of $325,000. The trial judge had found that the contract was ambiguous, and accordingly permitted the introduction of extrinsic evidence by both parties in order to determine the parties' contractual intent. However, the judge then proceeded to interpret the contract as written, construing it "against Appellants as the drafters of the contract," pursuant to *Smith v. Eliza Jennings Home* (1964), 176 Ohio St. 351, 27 O.O.2d 305, 199 N.E.2d 733, and *Coe v. Suburban Light & Power Co.* (1929), 32 Ohio App. 158, 167 N.E. 693.

The Roses appealed the court's judgment, asserting four assignments of error. Appellee appealed the court's order awarding the appellants rent for the months after the expiration of the parties' written lease agreement until the date of the final judgment.

I

"The trial court erred as a matter law, abused its discretion and ruled against the manifest weight of the evidence when finding that ambiguity existed in the agreement between these parties and in misapplying the contractual rules of construction which have no place in this dispute."

The parties herein disagree as to the purchase price for the real estate. Appellants contend that the parties intended the purchase price to be $500,000 at a minimum, and that an appraisal to be performed at the end of the five-year

lease period would determine whether the price would be increased to the amount of the new appraisal. Appellants claim that this intent is clear, based upon the contract language which provides for $240,000 credit to be applied to the purchase price, leaving a payment of $260,000 still owing at the time of the sale of the real estate, unless the price had been increased by the new appraisal. Appellants bolster their interpretation with evidence of the original appraisal of $517,000 made of the property in 1987, of which all the parties were aware at the time of the closing on the sale of the business.

Appellee, on the other hand, alleges, although the contract does not specifically provide so, that the reference in the contract to a new appraisal means that the property will, in any case, be sold for the new appraisal value, unless such appraisal was lower than $260,000, in which case the property would sell for that amount, less the $240,000 credit for the rental payments. Appellee has offered no evidence explaining the basis for or rationale behind this position.

It is obvious that the trial judge, after hearing the evidence, discounted all the evidence presented at trial except appellee's unsupported opinion that the ambiguous contract should be interpreted in a light favorable to him. The court agreed with appellee, ignoring the admitted parol evidence and choosing to construe the contract strictly against appellants, as if the parties had not been in an equal bargaining position at the time of the making of the original agreement.[1] See, *e.g.*, *G.F. Business Equip., Inc. v. Liston* (1982), 7 Ohio App.3d 223, 224, 7 OBR 285, 285, 454 N.E.2d 1358, 1359 (Ohio courts have generally resolved contract ambiguities against the drafter only where parties lacked equal bargaining power to select contract language).

When interpreting ambiguous contracts, courts must make a legitimate attempt, after hearing the relevant parol evidence, to determine the intent of the contracting parties.[2] *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "Where application of this rule makes the meaning of the language clear, the secondary rule of construction of strict construction [*sic*] against the drafter is not applicable." *Malcuit v. Equity Oil & Gas Funds, Inc.* (1992), 81 Ohio App.3d 236, 240, 610 N.E.2d 1044, 1046.

---

1. It appears that the cases cited by the trial court to support its decision and cases following the same rationale deal for the most part with adhesion contracts, wherein the parties were of unequal bargaining power, such as insurance contracts and contracts between laymen and experts or experienced businesspersons.

2. "Courts are not authorized to make for parties contracts which they did not make for themselves." *Coe v. Suburban Light & Power Co.* (1929), 32 Ohio App. 158, 161, 167 N.E. 693, 694.

To reach the conclusion that it did, the trial court must have determined that, despite both parties' acknowledgment that the real estate at issue was valued at more than $500,000 in 1987, appellants intended not only to sell the property for a price to be determined five years in the future, but also to give appellee credit for all lease payments made during the term of the lease against this unknown purchase price. The court's actual interpretation of the contract simply ignores the final clause of paragraph six of the parties' contract, which provides that the "real estate shall not be sold for less than Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00)." The trial court's decision states as follows:

"[T]he court rules that the meaning of paragraph six is that the price is to be established by appraisal and that plaintiff receives credit for all lease payments. Thus, plaintiff owes defendants an additional $85,000.00 for the purchase of the real estate."

Carried to its extreme, if the new appraisal had been less than $240,000 (the amount of the lease credit), the court's interpretation would require appellants to deliver a deed to appellee at the end of the lease period, and to pay appellee for the deficit!

We find the court's interpretation to be untenable, given the position taken by the Supreme Court in *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 250, 67 O.O.2d 321, 324, 313 N.E.2d 374, 378, wherein the court stated:

"Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, *while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred * * *.*" (Emphasis *sic.*)

Thus, the court's conclusion that appellants intended to sell for $260,000, less credits of $240,000, a property that they had determined to be valued at over $500,000 is erroneous, especially considering appellee's acknowledgment that he was aware of the value of the property when he first contracted with appellants. Accordingly, although we agree that the contract as written is ambiguous and subject to alternate interpretations, we find that the court did abuse its discretion by arbitrarily misapplying certain contractual rules of construction to the facts of this case. The court erred in treating the contract as one of adhesion[3] and declining to rely on the properly admitted parol evidence to determine the parties' contractual intent. Therefore, the first assignment of error is sustained, in part.

---

3. The record clearly demonstrates that all the parties were experienced businessmen, and were represented by their respective attorneys at the signing of the agreement.

## II

"The trial court ruled against the manifest weight of the evidence, erred as a matter of law and abused it's [*sic* ] discretion when granting the appellee specific performance on this contract."

In light of our discussion and disposition of the first assignment of error above, we find that the court abused its discretion in granting specific performance based upon an erroneous interpretation of the contract. An order for specific performance must be designed, as is any contract remedy, to insure that the parties receive the benefit of their bargain. Therefore, the second assignment of error is sustained.

## III

"The trial court erred as a matter of law, ruled against the manifest weight of the evidence and abused it's [*sic* ] discretion by ruling against the appellants [*sic* ] claim for medical benefits."

Paragraph seven of the parties' contract provided that appellee would continue to furnish appellants with health insurance benefits following the sale of the dealership. Appellants were also to be provided the opportunity to continue receiving such benefits following their retirement from the business, but at their own expense.

The contract provided as follows:

"7. Purchaser shall pay for the same continued health care benefits currently covering Patrick Rose and J. Norman Rose as long as Patrick Rose and J. Norman Rose are employed by Purchaser. Should Patrick Rose, J. Norman Rose or Juanita Drake terminate their employment with Purchaser, they will continue to be covered by the medical plan[;] however, it will be that individual's responsibility to pay the premiums associated with said medical plan, provided that the health insurance company will permit terminated employees to remain on said plan."

Finding that provision of the contract unclear, the court construed the contract against appellants as the drafters of the contract, and ordered appellee to pay appellants the amount which they could prove was owed them pursuant to the explicit contract language.

We find that this was the only realistic and fair action which could be taken by the court. Appellee demonstrated at trial that, even if the contract had clearly specified that appellants' medical insurance coverage remain the same as it was when they owned the dealership, compliance with that provision would have been an impossibility, since the full coverage enjoyed by appellants when they owned

the business was no longer available, at an affordable price, to *anyone* covered by a group plan. Therefore, the amount of damages awarded by the trial court was correct, in light of the evidence in the record. The third assignment of error is overruled.

## IV

"The trial court erred as a matter of law by not awarding the appellants the rebate checks owed to them by the appellee."

Appellants complain that the court erred in refusing to enforce an oral contract between the parties based upon the theory of unjust enrichment. However, the court, as the fact finder in the case, found that there was no contract between the parties for the payment of manufacturer's rebates. We agree. Absent reliable evidence to the contrary, it must be assumed that such rebates were included as part of the accounts receivable in the sale of the dealership. The court had only the testimony of the parties upon which to base its decision, which is supported by some evidence. The fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR ON CROSS–APPEAL

"The Court erred by awarding the Defendants rent rather than interest for the period following the appraisal."

Appellee's cross-assignment of error is not well taken, as it is not supported by the record. The effect of this opinion and judgment is to render appellee a holdover tenant based upon the parties' contract for lease of the real estate. The parties' agreement provided for credit of lease payments against the purchase price for a period of sixty months only. Therefore, the payment by appellee of monthly rent as long as he is occupying the real estate is appropriate, until the sale of the real estate is consummated. The assignment of error on cross appeal is overruled.

Having found error prejudicial to the appellants herein in the particulars assigned and argued, we vacate the trial court's judgment that $85,000 is due on the purchase of the real estate, and reverse the trial court's order of specific performance. The cause is remanded to the trial court for a determination and declaration of the terms of the parties' contract *based upon the evidence*[4]

---

**4.** We find that the most reliable and concrete evidence of the parties' contractual intent as to the price of the real estate is the 1987 appraisal of the property, of which all the parties were aware at the time the agreement was executed.

We further note, as argued by appellants, that at no time did appellee tender any purchase money for purchase of the real estate, nor was he able to obtain assurance from his bank that the money would be forthcoming. Furthermore, appellants have never refused to perform

*presented at trial.* The court's judgment on appellants' claims for health care benefits and rebates and awarding rent to the appellants is affirmed.

*Judgment reversed in part*
*and affirmed in part.*

THOMAS F. BRYANT and HADLEY, JJ., concur.

their duties under the contract. Therefore, the court's determination that tender would have been a vain act is also erroneous. *George Wiedemann Brewing Co. v. Maxwell* (1908), 78 Ohio St. 54, 84 N.E. 595, syllabus.