JOURNAL ENTRY AND OPINION
Appellant T.A.P. On Tap, Inc., dba Friendly Mini-Mart, (T.A.P.) sought to recover from its landlord, appellee Frank Sardis, the costs for the construction of the interior of a new store space at a different location plus loan interest and its resultant increase in rent, in addition to a judgment requiring Sardis to reconstruct its store space on his property. It asserts that the terms of its lease require the reconstruction of the store premises even though the entire building was destroyed and that the monetary damages resulting from the breach of contract were contemplated by the parties when the lease was made. It asserts Judge Brian J. Corrigan erred in granting Sardis' motion for summary judgment on those issues. We disagree and affirm.
Sardis owned a three-story, 24,180 square-foot brick building at 16524-28 Detroit Avenue in Lakewood. The upper two floors contained apartments and the Friendly Mini-Mart occupied about 3,000 square feet, or roughly one-half of the retail space, on the first floor. In 1994, Frank Incorvia, the store owner, offered to sell the business to Philip Epstein for $150,000 because, while the inventory and fixtures were valued at only $30,000, loyal clientele made the business profitable. To amortize this purchase price Epstein believed he needed a ten-year lease. The negotiations for the lease were apparently minimal as Epstein, who had formed T.A.P. On Tap, Inc., testified by affidavit that he signed the lease Sardis presented to him in its original form on June 1, 1994.
On July 8, 1997, the building was completely destroyed by fire. Sardis was offered a total of $600,267.02 as its fair market value from Nationwide Insurance Company, his fire loss insurer. T.A.P. demanded Sardis rebuild the mini-mart premises using those insurance proceeds but Sardis refused to do so on the basis that the insurance proceeds were insufficient to reconstruct the entire building, estimated to be $1,400,000.
On October 30, 1997, T.A.P. brought a complaint for injunctive and monetary relief against Sardis and Nationwide Insurance Company seeking to enjoin Nationwide from paying Sardis until the premises were repaired, requiring Sardis to repair his property and praying for $1,000,000 in damages for lost good will and profits. The judge granted the temporary restraining order on November 12, 1997, and scheduled a hearing on the preliminary injunction.
At that hearing Epstein testified that, in order to retain his customer base, he was entering into a lease for a building housing an automobile repair garage across the street from the Sardis property. The judge dissolved the temporary injunction and denied the preliminary injunction finding the measure of damages in a breach of contract is monetary in nature.
T.A.P. later dismissed Nationwide from the suit pursuant to Civ.R. 41(A)(1) and, on February 11, 1998, filed an amended complaint alleging a breach of contract and seeking $375,485, the entire cost of altering the repair shop into a beverage store, its loan interest and increased rent. It also prayed for specific performance requiring the construction of its store space. It conceded its damages did not include any claim for lost profits.
With leave of court, Sardis filed a motion for summary judgment on October 16, 1998, alleging: (1) he had no obligation to rebuild the premises unless he received sufficient insurance proceeds to restore it and his building to their original condition and, therefore, denied breach of contract; and (2) the only measure of damages for breach of a commercial lease is lost profits, not T.A.P.'s construction costs and rent. T.A.P. filed its brief in opposition. On December 11, 1998, the judge granted Sardis' motion without opinion. This appeal followed.
T.A.P.'s assignments of error one and two state:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THE CLEAR AND UNAMBIGUOUS WORDING OF THE LEASE REQUIRED SARDIS TO REBUILD THE PREMISES IF THE PREMISES WAS DESTROYED.
 II. EVEN IF THE TERMS OF THE LEASE WERE AMBIGUOUS, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SARDIS BECAUSE SARDIS IS THE ONE WHO DRAFTED THE LEASE AND IS RESPONSIBLE FOR THE AMBIGUITY, AND THE TERMS OF THE LEASE MUST BE CONSTRUED AGAINST HIM.
This court reviews the grant of summary judgment de novo, applying the same standard as that applied by the trial judge. Druso v. Bank One of Columbus (1997), 124 Ohio App.3d 125, 131. A trial court may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,369 N.E.2d 267, 274; accord Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.
T.A.P. submits that Sections 10.1.2 and 10.3 of the lease agreement mandate, in the event of Total Destruction, the restoration of its business premises, regardless of whether Sardis has sufficient insurance to complete the entire building as originally constructed. The lease provided, in part:
5.1 Landlord's Maintenance Obligations:
 Landlord shall provide or cause to be provided, certain maintenance and service functions as Landlord deems necessary. Further, Landlord shall maintain and mak e all necessarystructural repairs and replacements to the Building and all other improvements, as deemed necessary by Landlord.
5.2 Tenant's Maintenance Obligations:
 Tenant shall, at Tenant's sole cost and expense, maintain the premises and all improvements located therein in the same condition in which they were received when Tenant first occupies Premises, reasonable wear and tear, depreciation, damage and loss from the elements, loss covered by insurance and other occurrences beyond the reasonable control of the Tenant excepted. * * *
10.1.2 Total Destruction Defined:
 The term Total Destruction wherever used herein shall be deemed to mean the occurrence of an event which results in the damage and destruction of all or a portion of the Premises and/or other improvements located in the Premises such that Tenant is no longer able to conduct any of the business on the Premises which Tenant conducted immediately prior to the occurrence of such Total Destruction.
10.3 Total Destruction:
* * *
10.3.1 Prior to Last Year of Term:
 Upon the occurrence of an event of Total Destruction at a time when there remains one (1) or more years on the then unexpired term of this Lease, Landlord shall have the duty and obligation to repair and restore the damaged portion of the Premises and/or other improvements located in the Premises which were originally constructed or installed by Landlord to their same condition as it existed immediately prior to the occurrence of such event of Total Destruction; provided however, that Landlord shall have received sufficient insurance proceeds with which to do so. * * * (Emphasis added.)
There is no dispute that the term Premises, as defined in the lease, refers only to a portion of Building containing the mini-mart; and the terms Building and Landlord's Property, also separately defined, refer to the entire building and the building site, respectively.
T.A.P. stresses that Total Destruction refers to any occurrence that destroys all or any part of its portion of the building that prevents it from conducting any business and encompasses both complete destruction of the mini-mart while other portions of the building escape, as well as destruction of the entire building. Thus, it is T.A.P.'s position that the lease obligated Sardis to reconstruct the mini-mart without regard to whether he reconstructed the rest of the building, so long as he received sufficient insurance proceeds with which to do so and, T.A.P carefully notes, he has.
Rules of contract construction are best applied in the hierarchical order courts have devised. The primary rule of contract interpretation is to give effect to the parties' intent and where the parties have entered into a written agreement, the writing is presumed to reflect that intent. Terms in a writing are construed to give consistent meaning to the contract as a whole and a judge will declare a contract term ambiguous only if its meaning cannot be ascertained after reference to the other terms and the writing as a whole. Adelman v. Timman (1997), 117 Ohio App.3d 544,690 N.E.2d 1332. If an ambiguity is found, a judge will first attempt to ascertain the parties' intent from available parol evidence and if the term's meaning is still in doubt, it will be construed against the party who drafted it. Cline v. Rose (1994),96 Ohio App.3d 611, 615, 645 N.E.2d 806. Here, the meaning of the insurance condition clause can be ascertained from the surrounding terms of the lease, because where the performance of a contract is affected by external events, one must determine which party bore the risk of loss for the particular event. Truetried Service Co. v. Hager (1997), 118 Ohio App.3d 78, 83, 691 N.E.2d 1112, 1115.
There is no doubt that an event of Total Destruction occurred. However, contrary to T.A.P.'s contentions, Sardis is not absolutely required to restore the mini-mart even if the building was not destroyed. T.A.P. has misinterpreted the conditions in the lease that trigger Sardis' duty, to wit: only in the event that he has received sufficient insurance proceeds to do so from an unidentified insurance source. Sardis received $600,267.02 from his insurer as the fair market value for the entire building. Nothing in the lease explains whether Sardis is required to expend insurance proceeds recovered for the building's destruction in order to repair or restore a portion of it. There is no pro rata distribution scheme for Sardis' insurance proceeds set forth in the lease nor does it even state whether he is required to maintain insurance coverage of any particular kind or amount.
The Section 4 — INSURANCE portion of the lease, however, required that T.A.P. acquire and maintain a policy of Public Liability Insurance with bodily injury/death and property damage coverages of $1,000,000 each, $50,000 of fire legal liability and $5,000 in medical payments with Sardis as an additional named insured. T.A.P. was also required to obtain Personal Property Insurance covering damage or destruction of its contents, goods, furniture and fixtures and Plate Glass Insurance.
The lease, as one might expect, deals specifically and almost exclusively with the parties' rights and duties with regard to the 3,000 square foot Premises. The destruction provisions referred only to the Premises without reference to the remaining portions of the building or the site itself. There is no reason to believe that the insurance condition now in question would be directed elsewhere. The most reasonable interpretation of the contract language is that the phrase sufficient insurance proceeds refers to the fire insurance proceeds from a policy procured by T.A.P. and payable to Sardis as an additional named insured, and not to any Nationwide payment Sardis received for the loss of the entire building.
In this case, Sardis bore the risk of loss in an event of Total Destruction of T.A.P.'s portion of the building, but only if he was able to pass that loss on to T.A.P.'s insurer. T.A.P. bore the risk that the conditions would not occur but, if it did and $50,000 was insufficient, the lease would terminate and T.A.P. would assume its own risk with respect to the destruction of its premises.
Sardis contends that the lease provisions and the parties contemplated the continued existence of the entire building as the keystone of the lease because without the building the landlord could not
 * * * repair and restore * * * (T.A.P.'s portion of the building) and/or other improvements located in (T.A.P.'s portion of the building) which were originally constructed or installed by Landlord to their same condition as it existed immediately prior to the occurrence * * *. (Emphasis added.)
T.A.P. does not dispute that reconstruction of the entire building would cost $1,400,000, nor that the $600,267.02 was the fair market value of the building. T.A.P. claimed $212,000 as its cost to renovate an existing building to accommodate its new mini-mart but does not state the costs of constructing a new building for the same purpose. T.A.P. has never argued the percentage of Sardis' insurance recovery attributable to the mini-mart portion, nor presented any evidence that the mini-mart could be restored with the funds attributable to its portion of the building's fair market value.
Sardis presented undisputed evidence that he recovered less than half of the replacement cost of his building. Under the lease he is required to make all necessary structural repairs and replacements to the Building and all other improvements only if he deems them necessary and, thus, had the right to determine not to make structural repairs and replacements. T.A.P. agreed to this provision and is bound by it. New Towne L.P. v. Pier 1 Imports (U.S.), Inc. (1996), 113 Ohio App.3d 104, 680 N.E.2d 644. Because of the absence of any evidence or argument to the contrary, summary judgment was appropriate.
T.A.P. contends, in the alternative, that the Damage and Destruction provisions of the lease are ambiguous, and that any ambiguity must be construed against Sardis, as the drafter of the agreement. Its representative, Philip Epstein, stated that he signed the lease Sardis presented to him in its original form, after reading it and concluding that Sardis would be required to rebuild the Premises even if the building was destroyed. Epstein apparently did not discuss his understanding with Sardis.
The doctrine of contra proferentum, or construing contract terms against the drafter, is employed where necessary to supplement the primary goal of contract interpretation; to ascertain and effectuate the reasonable intent of the parties. To that end, the doctrine is applied only when the contract is deemed ambiguous and parol evidence has not revealed the parties' intent. Adelman and Cline, supra.
Even if the insurance condition could be deemed ambiguous, its interpretation would still be a matter of law because T.A.P. failed to provide any extrinsic evidence that would reveal the meaning of the disputed term, or create a factual question concerning its meaning. T.A.P. would have this court blindly construe the term against Sardis as a matter of law.
Where contract terms are ambiguous, contra proferentum is not preferred as a tool of interpretation although it is most appropriately utilized in situations where the parties did not have equal bargaining positions, or in contracts of adhesion. Cline,96 Ohio App.3d at 615; Wall v. Firelands Radiology, Inc. (1995),106 Ohio App.3d 313, 666 N.E.2d 235. The doctrine is intended to aid parties who had no input in drafting a contract's terms because they lacked the power or ability to negotiate; it is not intended to aid parties who choose to accept terms because they simply are unwilling to do otherwise. A sophisticated party is not free to avoid his duty to arrive at a mutual agreement by relying on contra proferentum to attach his subjective meaning to disputed terms.
Epstein contacted Sardis concerning lease terms before agreeing to purchase the mini-mart and was under no compulsion to enter the mini-mart business in any capacity, much less in that location as the record indicates there is no shortage of mini-marts or beverage stores in the vicinity. Therefore, if he was unhappy with the terms suggested by Sardis, he had every opportunity to negotiate for other terms or refuse the deal. Epstein's affidavit reveals he had actual notice of the insurance condition and considered it in deciding whether to enter the lease. He failed to inquire about Sardis' insurance or request contract terms requiring the relief he now seeks. The lease itself contains clauses that refer to sections that did not exist or were renumbered, suggesting that Sardis adapted the lease from a standard form and had removed provisions he found unappealing. The deleted sections may have contained language requiring Sardis to maintain insurance because section 4.3 of the lease required T.A.P. to reimburse Sardis for any acts that increased Sardis' insurance premiums for any insurance coverage required to be provided by Landlord pursuant to this Lease * * *. Nevertheless, Epstein attached his own understanding to what he now alleges to be ambiguous terms and went forward. Assignments of error one and two are without merit.
The last assignment of error states:
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO COUNT I OF THE AMENDED COMPLAINT, SINCE THE DAMAGES SUSTAINED BY PLAINTIFF WERE PROXIMATELY CAUSED BY SARDIS'S BREACH OF THE LEASE AND WERE WITHIN THE CONTEMPLATION OF THE PARTIES.
Having found no breach of contract, this assignment of error is moot. App.R. 12(A)(1)(c).
It is ordered that the appellees recover from appellant their costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ ANNE L. KILBANE, JUDGE
TIMOTHY E. McMONAGLE, P.J., CONCUR; LEO M. SPELLACY, J., CONCURRING IN JUDGMENT ONLY.