OPINION
The Estate of James G. Murray, deceased, and M. Y. Development, Ltd. appeal from the judgment entry of the Trumbull County Court of Common Pleas, Probate Division, overruling objections to the magistrate's report and re-adopting the magistrate's decision and report in full. The magistrate's decision and report set the redemption value of decedent James G. Murray's interest in M. Y. Development, Ltd., a limited liability company.
On November 8, 1995, David A. Younkman ("Younkman") and James G. Murray ("Murray") executed an operating agreement concerning M. Y. Development, Ltd. Younkman held a sixty-two and a half (62.5) percent interest in the company, while Murray held the remaining thirty-seven and a half (37.5) percent interest. Section 3.8 of the Operating Agreement addressed the assignment of membership interest upon death or incompetency of a member. That section states:
 "If a member is a natural person, upon the death of a member or an adjudication of a court of competent jurisdiction that the member is incompetent to manage his or her personal property, then in that event the membership interests shall be assigned to the heirs and assignees of the member, however the assignment of the membership interests are not entitled to become or exercise any of the rights of the member, however the assignment entitles the assignee to receive, all distributions of cash and other property and the allocations of profits, losses, income, gains, deductions, credits, or similar items to which the assignor of the membership interest would have been entitled."
 Section 3.12(b)(iii) provides that, if a member is an estate, it ceases to be a member and is deemed to have withdrawn from the company upon the personal representative's distribution of the estate's entire interest in the company. Section 3.13 states: "Within a reasonable time or one hundred eighty (180) days after withdrawal, a withdrawing member is entitled to receive the net of book value of the member's interest in the Company as recorded in the last regular accounting preceding the withdrawal."
Murray died on November 2, 1997. Pursuant to his will, Younkman was appointed executor of his estate. On May 22, 1998, an inventory and appraisal of the estate was filed with the probate court. The estate's interest in M. Y. Development, Ltd. was valued at one hundred fifteen thousand forty dollars and five cents ($115,040.05). On October 8, 1998, an amended inventory and appraisal were filed with the probate court. The valuation of the estate's interest in M. Y. Development, Ltd. remained the same.
Younkman distributed the estate's interest in M. Y. Development, Ltd. on October 31, 1998. Younkman determined the value of the estate's interest based upon the monthly accounting balance sheet of September 30, 1998. Younkman stated he knew the asset was declining in value and he wished to distribute the asset before any further decline occurred. Younkman valued the estate's interest as being worth eighty-eight thousand six dollars and seventy-eight cents ($88,006.78). The probate court approved the amended inventory and appraisal on November 24, 1998. On December 8, 1998, a statement of the assets remaining in the fiduciary's hands was filed. This listed the interest in M. Y. Development, Ltd. as being worth one hundred fifteen thousand forty dollars and five cents ($115,040.05).
On April 16, 1999, Younkman filed an application to complete contractual obligation to redeem corporate interest. In the application, Younkman argued the Operating Agreement entered into by Murray and him required a member or his estate to offer the current percentage interest owned at the time of his death back to the company as a redemption of the decedent's ownership interest at the time of death. Younkman asked the probate court for authority to submit Murray's ownership interest back to the company at a redemption value of eighty-eight thousand six dollars and seventy-eight cents ($88,006.78). The court appointed an attorney to represent the estate in the matter.
On May 15, 2000, the estate's representative filed her report. The representative determined the Operating Agreement was ambiguous and stated it appeared that, absent some exercise of rights by the deceased member's heirs, the member's interest passed to his heirs. The report also concluded M. Y. Development's books and records were not kept according to generally accepted accounting principles. The report noted that the filing of the company's income tax return was the only time "external user" financial information was supplied by the company. Murray's interest in the company at the time the last tax return was filed before his death, on December 31, 1996, showed his interest as being worth one hundred thirty-two thousand five hundred sixty-six dollars and twenty-five cents ($132,566.25). The representative determined Murray withdrew on the date of his death because of the appearance of self-dealing by Younkman. The representative concluded it was appropriate to use the books and records immediately prior to Murray's death for valuation purposes. The representative stated that the last accounting period prior to Murray's death occurred on December 31, 1996, as that was the last accounting report independently prepared and shared with external users.
A hearing was held before a magistrate on the matter. The magistrate's report and decision recommended the court find that distribution of the estate's interest was made on October 31, 1998, prior to the approval of the amended inventory. Because the inventory was premature, the magistrate stated Murray withdrew from the company on the date of his death. The report also found the last regular accounting period prior to the withdrawal was on December 31, 1996. Therefore, the estate was entitled to receive one hundred thirty-two thousand five hundred sixty-six dollars and twenty-five cents ($132,566.25). On September 19, 2000, the trial court adopted the magistrate's report and decision in full. On November 3, 2000, Younkman filed objections to the magistrate's decision and report. On November 18, 2000, the trial court overruled Younkman's objections and re-adopted the magistrate's decision and report in full. Younkman has appealed from this judgment entry.
Younkman raises the following assignments of error for review:
 "[1.] The Trial Court erred to the prejudice of Applicants-Appellants by failing to enforce the provisions of the M. Y. Development, Ltd. Operating Agreement in determining the value of the decedent's estate's interest in M. Y. Development, Ltd.
 "[2.] The Trial Court erred to the prejudice of Applicants-Appellants in ruling that withdrawal of James G. Murray as a member of M. Y. Development, Ltd. occurred on November 2, 1997, the date of his death.
 "[3.] The Trial Court erred to the prejudice of Applicants-Appellants in ruling that December 31, 1996 is the appropriate last regular accounting for determining the deceased member's interest in M. Y. Development, Ltd. because it is the last accounting report which was independently prepared and shared with users.
 "[4.] The Trial Court erred to the prejudice of the Applicants-Appellants in ruling that the estate is entitled to $132,566.25 and ordering the fiduciary to complete the redemption of the decedent's interest in the Company at a redemption value rate of $132,566.25."
 Appellants' first and second assignments of error will be addressed together as similar issues of law and fact are involved. Appellants challenge the trial court's construction of the Operating Agreement. Appellants assert the Operating Agreement defines when a member is deemed to have withdrawn from the company. If the member is an estate, appellants argue withdrawal occurs upon the personal representative's distribution of the estate's entire interest in the company. Appellants contend the trial court ignored the contract between the parties by choosing Murray's date of death as being the date of withdrawal. Appellants maintain that the October 31, 1998 distribution of the estate's membership interest did not constitute distribution for purposes of the probate proceeding but only for purposes of the Operating Agreement.
The construction of written contracts is a matter of law. Alexanderv. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement.Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313. When terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. Latina v. Woodpath Dev.Co. (1991), 57 Ohio St.3d 212, 214. Such an interpretation is reviewedde novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108. If the contract's terms are unambiguous, a court may not interpret the contract in a manner inconsistent with those terms. Alexander, supra, at 246. Only where the language of a contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, syllabus.
If the contract is ambiguous, the court must examine the evidence and determine the intent of the parties. Cline v. Rose (1994),96 Ohio App.3d 611. "An interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion." Maines Paper Food Serv., Inc. v. Eanes
(Sept. 28, 2000), Cuyahoga App. No. 77301, unreported, 2000 Ohio App. LEXIS 4480, at 6. Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible to more than one interpretation. UnitedStates Fid. Guar. Co. v. St. Elizabeth Med. Ctr. (1998),129 Ohio App.3d 45, 55.
The crux of this appeal centers on determining the date of withdrawal under the terms of the Operating Agreement. The Operating Agreement provision directly addressing withdrawal of a member, that is an estate, provides withdrawal occurs upon the personal representative's distribution of the estate's entire interest in the company. The parties addressed the withdrawal of an estate as a member. If the personal representative distributed the estate's entire interest, then withdrawal had occurred. Nothing in the Operating Agreement mentions withdrawal being triggered by the death of a member. Therefore, the court erred by adopting the magistrate's decision that the date of withdrawal was the date of Murray's death.
However, we do not agree with appellants' argument that the distribution was for purposes other than the probate proceedings. The probate court correctly found that Younkman prematurely distributed the asset. Distribution could not occur until after the probate court approved the estate's inventory, which occurred on November 24, 1998. The estate's interest in M. Y. Development, Ltd. should be valued at the last regular accounting period preceding November 24, 1998. Appellants' first and second assignments of error have merit.
In their third assignment of error, appellants contend the trial court incorrectly determined that December 31, 1996 constituted the last regular accounting for determining Murray's interest in M. Y. Development, Ltd. The trial court found this was the last accounting report which was independently prepared and shared with external users. Appellants assert that the evidence admitted at the hearing showed that the records of M. Y. Development Ltd. were consistently kept on a monthly basis. Therefore, the last monthly record preceding withdrawal should be used to determine the value of the distribution.
The term "last regular accounting period" is ambiguous. The term cannot be understood without extrinsic evidence. Testimony and documents admitted at the hearing indicated that M. Y. Development, Ltd. kept its books on a monthly basis. Therefore, the regular accounting period for this company occurred each month. Appellant's third assignment of error has merit. Based upon the resolution of the first three assignments of error, appellants' fourth assignment of error is moot.
The decision of the Trumbull County Court of Common Pleas, Probate Division, is reversed. The case is remanded to the trial court for determination of the estate's interest in M. Y. Development, Ltd. based upon the last regular accounting period preceding the approval of the amended inventory on November 24, 1998. We note that whether Younkman caused any delay in the distribution of the estate's interest in M. Y. Development, Ltd., which resulted in a benefit to him or the company, is also an issue which remains to be determined by the trial court.
CHRISTLEY, P.J., concurs with Concurring Opinion, NADER, J., concurs.