OPINION
{¶ 1} Plaintiff-appellant, Lima Ford, Inc. (hereinafter "Lima Ford"), appeals the judgment of the Allen County Court of Common Pleas finding that Lima Ford did not have just cause to terminate appellee, Robert Aubin, and thereby breached the parties' employment agreement.
 {¶ 2} Robert Aubin (hereinafter "Aubin") came to work as the General Manager for Lima Ford in the spring of 1998. On April 1, 1998, Aubin entered into an employment agreement with Lima Ford, agreeing to a five-year term of employment unless and until "mutually terminated by the parties." The agreement set forth the compensation Aubin would receive in exchange for Aubin putting forth "every reasonable effort honorably and ethically to carry forth the sales and service of automobiles sold by [Lima Ford]." Aubin's compensation included an "interest free loan" in the amount of $66,732.23 which was to be repaid in three annual payments, each due on the anniversary date of Aubin's employment, and deducted from Aubin's "fixed" annual bonus of $22,244.00 stipulated in the agreement. The employment agreement further stated that Aubin's employment would not be terminated "except for good cause."
 {¶ 3} In March 2000, Lima Ford hired Mary Morris, an automotive consultant, to assess the business office systems and operations of the dealership with the goal of finding ways for the dealership to run more efficiently and profitably. Following her assessment, Morris provided Lima Ford with a "Dealership Assessment," which listed twenty-two problem practices at the dealership. Sixteen of the twenty-two problem practices listed in the Dealership Assessment specifically included transactions involving Aubin. Morris met with Mike Pruitt, president of Lima Ford, regarding the Dealership Assessment and related her findings. Pruitt then met with Aubin. Pruitt testified that after meeting with Aubin, he was not satisfied with Aubin's explanations of the transactions, felt he was being dishonest and concluded that he could no longer trust him. Pruitt, therefore, terminated Aubin's employment on or about March 1, 2000.
 {¶ 4} On March 8, 2000, Lima Ford filed a complaint against Aubin alleging he breached the terms of the employment agreement relating to unethical and dishonorable conduct. Lima Ford also prayed for damages in the amount of $38,531.11, which represented the balance on the interest-free loan Lima Ford had extended to Aubin upon his employment.
 {¶ 5} Aubin filed his answer and a counterclaim on March 21, 2000. Aubin claimed that Lima Ford breached the employment agreement and claimed defamation. The trial court bifurcated the issues of liability and damages and scheduled the case on the issue of liability for a bench trial on August 19, 2002.
 {¶ 6} Following the bench trial on liability, the trial court entered a judgment in favor of Aubin. The trial court found that Lima Ford failed to prove Aubin breached the employment agreement by acting unethically or dishonestly and, consequently, Lima Ford did not have just cause to terminate Aubin. On the claim of defamation, the trial court entered judgment in favor of Lima Ford.
 {¶ 7} In lieu of a trial on the issue of damages, the parties submitted stipulations of fact and written arguments. The trial court entered judgment on December 12, 2003, finding that the employment agreement indicated the interest-free loan was in addition to other compensation to which Aubin was entitled. The trial court found that due to Aubin's wrongful termination, there were no annual bonuses from which to repay the loan, therefore, Aubin was not required to repay the balance of the loan. Aubin was otherwise awarded $275,790.15 in damages.
 {¶ 8} It is from this decision that Lima Ford appeals and sets forth three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred as a matter of law by failing to applythe contractual standard of "good cause" as contained in theparties' Employment Agreement to determine whether Appellant wasjustified in terminating Appellee's employment and instead goingoutside the four corners of the Agreement to introduce andutilize a subjective and heightened standard of "just cause."
 {¶ 9} Aubin's employment agreement stated that his employment would not be terminated "except for good cause." Lima Ford argues that the trial court erred by disregarding this language and, instead, interpreting the agreement in terms of "just cause." Lima Ford claims that the trial court's use of the "just cause" standard is substantially different than the standard of "good cause" that the parties chose to include in the agreement. Lima Ford contends, therefore, that the trial court erred in measuring its actions against a "heightened standard."
 {¶ 10} The construction and interpretation of contracts are matters of law. Latina v. Woodpath Dev. Co. (1991),57 Ohio St.3d 212, 214. An appellate court applies a de novo standard of review to questions of law and may interpret the language of the contract, substituting its interpretation for that of the trial court. Children's Med. Ctr. v. Ward (1993), 87 Ohio App.3d 504,508. If the contract is ambiguous, however, the court must examine the evidence and determine the intent of the parties.Cline v. Rose (1994), 96 Ohio App.3d 611. The interpretation of an ambiguous term used in a contract is a question of fact and will not be reversed on appeal absent an abuse of discretion.Maines Paper Food Serv., Inc. v. Eanes (Sept. 28, 2000), 8th Dist. No. 77301. An abuse of discretion connotes more than an error in law of judgment; it implies a decision that is arbitrary, unreasonable or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} In the case sub judice, the trial court noted that the employment agreement provided that Aubin was to perform his job duties "honorably and ethically" and that the agreement would not be terminated "except for good cause." However, because the agreement did not define the term "good cause," the trial court interpreted the employment agreement in terms of "just cause."
 {¶ 12} The trial court found that in the employment context, "just cause" is that "which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Regarding the problems which Morris discovered during the Dealership Assessment, the trial court determined that Aubin acted according to policy in effect at Lima Ford, with Mike Pruitt's permission or at his direction and never acted unethically or with intent to damage plaintiff. The trial court, therefore, found that Lima Ford failed to prove that Aubin breached his employment agreement by acting dishonestly.
 {¶ 13} After a review of the trial court's decision, we find that the trial court's definition of "just cause" was irrelevant to its determination. Before his termination would have been warranted, the trial court had to find first that Aubin acted contrary to the employment agreement. Rather, the trial court found that Aubin had not breached the employment agreement. Therefore, it was unnecessary to determine whether his termination was done for "good cause." The trial court found upon the facts that Aubin had fulfilled his duties pursuant to his employment agreement with Lima Ford. Since no cause existed to terminate him, his termination was clearly in violation of the employment agreement. Accordingly, we do not find that the trial court abused its discretion.
 {¶ 14} Lima Ford's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court's conclusion that Appellant rather thanAppellee breached the parties' Employment Agreement was contraryto the manifest weight of the evidence presented.
 {¶ 15} In this assignment of error, Lima Ford claims that the evidence presented necessitated a finding in its favor. Lima Ford contends that with respect to the problem practices identified in the Dealership Assessment, the trial court failed to consider the expert opinion of Mary Morris, who performed the assessment, and instead gave more weight to the testimony of Aubin's former colleagues.
 {¶ 16} A trial court is in the best position to weigh credibility as it has the opportunity to hear the testimony and observe the demeanor of the witnesses. Seasons Coal Co., Inc. v.City of Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280.
 {¶ 17} In his testimony, Mike Pruitt stated that Aubin's termination was based solely on the allegations contained in Morris's Dealership Assessment. In the assessment, Morris alleged, among other things, that Aubin had taken dealership incentives, rebates and holdbacks to reduce the price of his personal vehicle; sold vehicles to his relatives for less than book value; altered appraisals which resulted in losses for the dealership; allowed his wife to drive a dealership automobile, which she damaged in an accident and charged the repairs to the dealership; and returned dealership profits to customers.
 {¶ 18} One of the most contested allegations in the Dealership Assessment was known as the "Glaval deal." Morris alleged that in purchasing a conversion van for himself from Glaval Corporation, Aubin used $4,000.00 in dealer incentives to reduce the price of the van. Morris also reported that Aubin further reduced the price of the van by the use of a holdback incentive of $708.00.
 {¶ 19} Aubin testified that at the time he purchased the Glaval van, Lima Ford employees were allowed to buy a vehicle for invoice minus holdback, minus finance cost, minus any incentives available on the vehicle. Therefore, the incentives he took on the van were allowed by dealership policy. He further testified that the Glaval representative offered him a $4,000.00 rebate if he would purchase a new van left from the previous model year. Aubin testified that he told Mike Pruitt about the deal before it was completed, so that he would not be surprised when a 1999 van was delivered to the dealership when 2000 models were expected.
 {¶ 20} Three other Lima Ford employees, Mike Saddler, Tim Barrows and Paul Moser, testified that the practice of employees buying vehicles at invoice minus holdback minus advertising was a normal practice. In fact, Saddler cited thirteen other deals of the same kind that had been done with other employees. Saddler, Barrows and Moser also testified that they knew about the "Glaval deal." Specifically, Barrows and Moser testified that they were both present when the Glaval representative offered to give Aubin a $4,000.00 rebate on the conversion van.
 {¶ 21} Matt Williams and Greg Vogle, former Glaval employees, testified that $4,000.00 was negotiated as a rebate for Aubin's van. The Glaval employees testified that upon being confronted with Morris's report, Aubin called Glaval and Williams faxed a letter to Lima Ford confirming that Aubin was, indeed, entitled to a $4,000.00 rebate on the van that he purchased. The faxed letter was also entered into evidence.
 {¶ 22} Saddler, Barrows and Moser also testified about the other allegations contained in the Dealership Assessment. The three witnesses corroborated Aubin's explanation of the transactions, stating that the issues raised in Morris's report were either inaccurate or incomplete. Aubin testified that he attempted to explain the accounting anomalies to Mike Pruitt and that Pruitt suspended him until he could prove the allegations were untrue. However, Pruitt terminated Aubin the following day and Lima Ford filed suit against Aubin approximately one week later.
 {¶ 23} Following the presentation of evidence regarding the allegations contained in the Dealership Assessment, the trial court determined that Lima Ford failed to show "negligence, neglect of duty, misconduct, injury to employer's business, dishonesty or disloyalty on [Aubin]'s part." The trial court found that Aubin had acted within the parameters of dealership policy or had gotten permission and/or direction from Mike Pruitt in completing the various transactions which Morris reported as suspect.
 {¶ 24} After reviewing the testimony and evidence, we find that competent, credible evidence existed to support the trial court's finding that Lima Ford did not have cause to terminate Aubin. Although Lima Ford contends that Morris's testimony was more believeable than that of Aubin's colleagues, we must give deference to the trial court. Appellate courts are not factfinders; we neither weigh the evidence nor judge the credibility of witnesses; that is the province of the trial court. Cross Truck Equipment Co. v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. It is not the role of an appellate court to choose between conflicting testimony but to determine if there is sufficient evidence to support the trial court's findings and conclusions. Id. Upon a complete review of the testimony and the record in the case sub judice, we find that such evidence exists. Therefore, we hold that the trial court's decision was not against the manifest weight of the evidence.
 {¶ 25} Accordingly, Lima Ford's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court's conclusion that Appellant owed any furthercompensation to Appellee and that Appellee was not required topay the principal balance owed on Appellant's loan to Appellee atthe time of his termination was contrary to the manifest weightof the evidence presented.
 {¶ 26} Lima Ford maintains that the trial court erred in treating an interest free loan extended to Aubin upon commencement of his employment in the amount of $66,732.23 as a "sign-on bonus." Lima Ford contends that this is in direct contradiction to the terms of the agreement which specifically state that the $66,732.23 was a loan and was to be repaid. Aubin's employment contract states in pertinent part:
[T]he Employer agrees to make an interest free loan to theEmployee, in the sum of $66,732.23, payment of which shall bemade to Employee on the commencement date of employment. TheEmployee agrees this loan shall be repaid in 3 annual payments,each due on the anniversary date of commencement or employment.Each payment shall be in the sum of $22,244.00, principal only.The payment of which shall be deducted from an annual bonus paidto Employee of $22,244.00 during this three year period. Thisbonus shall be fixed and shall be separate and in addition to thecompensation terms * * *.
 {¶ 27} After reviewing the parties' stipulations of fact and written arguments on the issue of damages, the trial court determined that the parties intended that the interest free loan extended to Aubin was to be repaid. However, the trial court found that, pursuant to the employment agreement, the source of the repayment was Aubin's "fixed" annual bonus of $22,244.00. The trial court reasoned that had Lima Ford not breached the employment agreement by terminating Aubin, subsequent bonuses would have been applied toward repayment of the loan and it would have been paid in full after three years. However, since Aubin was wrongfully terminated after only one payment was made, he lost the benefit of the "fixed" annual bonus. By virtue of its breach of the agreement, the trial court concluded that Lima Ford was not entitled to any further repayment on the interest free loan.
 {¶ 28} Interpretation of a contract is a matter of law and an appellate court may interpret the language of the contract, substituting its interpretation for that of the trial court. SeeChildren's Med. Ctr. v. Ward (1993), 87 Ohio App.3d 504, 508. After reviewing the employment agreement, however, we do not find that the trial court erred in finding that the "interest free loan" did not have to be repaid.
 {¶ 29} In a breach of employment contract context, the Ohio Supreme Court has recognized that not only is the employee's salary considered when calculating damages, but other tangible benefits, such as bonuses and vacation pay, also must be considered. Worrell v. Multipress, Inc. (1989),45 Ohio St.3d 241, 247. The employment agreement clearly states that the bonus "shall be fixed and shall be separate and in addition to the compensation terms." We find that this language entitled Aubin to compensation for the loss of the bonus in addition to compensation for his lost wages due to Lima Ford's breach of contract. The trial court chose to compensate Aubin by finding that he was not obligated to repay the interest free loan. We do not find that the trial court's decision was in error.
 {¶ 30} Lima Ford's third assignment of error is, therefore, overruled.
 {¶ 31} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Bryant, J., Concur.