**TRUETRIED SERVICE COMPANY, Appellant,**

v.

**HAGER et al., Appellees.**

[Cite as *Truetried Serv. Co. v. Hager* (1997), 118 Ohio App.3d 78.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70163.

Decided Feb. 3, 1997.

*Daniel S. White*, for appellant.

*Richard G. Lillie* and *Gretchen A. Holderman*, for appellees.

---

PORTER, Judge.

Plaintiff-appellant Truetried Service Company appeals from a judgment following a bench trial in favor of defendants-appellees Gene Hager and Brad Bush arising out of plaintiff's claim for rent under a five-year lease of commercial premises to defendants. Plaintiff contends that the trial court erred in holding that defendants' performance under the lease was excused by commercial impracticality. We agree and reverse for the reasons hereinafter stated.

The case arose out of plaintiff's lease of commercial property on E. 185th Street in Cleveland to defendants for use as a tavern and restaurant in December 1992. The written lease agreement provided for a five-year term from January 1, 1993 through December 31, 1997 at fixed rent for the first two years ($975 payable monthly) and thereafter at a variable rent indexed to the Consumer Price Index. The leased premises were part of a commercial strip of which plaintiff was the lessor. Although the lease provided that the premises were let "together with the right to use the area behind the said premises for parking purposes of LESSEE and LESSEE'S employees," the lease was silent on arrangements for where the lessees' patrons of the tavern and restaurant would park. The lease was also silent on what zoning conditions may have inhibited the operation or use of the facility for tavern and restaurant purposes. The premises had previously been occupied by a shoe store. The form lease was apparently drafted and prepared by lessor's agent, attorney Michael A. Shore, but was negotiated with various attorneys for defendants.

According to testimony at the bench trial, defendants began renovating the property as soon as they took possession in January 1993. They tore down a wall that divided the interior and walls around two lavatories. They tore down a set of fluorescent lights, took out basement wiring, and dug a three-foot-deep hole that was two feet wide and six feet long in the cement floor in order to put in pipes for a larger bathroom. After about two months, the defendants discovered that the roof leaked and that the basement joists had been ruined by a previous fire. The defendants told Shore about these problems, but according to them, the problems were never fixed. According to Shore, the leaky roof was fixed as soon as the weather permitted, and there was nothing wrong with the basement joists.

The defendants submitted their floor plans to the Cleveland building inspector in January or February 1993. When the inspector saw the plans and discovered

that the defendants' tavern was to seat between eighty and one hundred people, the inspector informed them that they were going to have parking problems, as the city zoning ordinances required one parking space for every four people, and one parking space for each employee. The whole shopping strip had only eight parking spaces allotted to the common parking area behind the strip. The defendants informed Shore about the parking problem and were informed that they could have five of the eight spaces in the back of the building and that they should talk to the owner of the parking lot across the street to obtain more parking space. The defendants contacted the parking lot owner to see if they could lease thirty spaces. The owner refused to lease them the additional space. They also tried to rent spaces from other private parking lot owners near the property without success.

Defendants also had several conversations with Cleveland Councilman Polensek, who told them that the Town Association, an organization of local merchants, did not want another tavern on East 185th and that he would do everything he could to make sure their tavern did not go in there. Defendants admitted that although they considered making the tavern a topless bar, they considered doing that only if the tavern was not making enough money. Since Polensek was strongly opposed to such a bar, they agreed they would not run that type of establishment.

Defendants admitted that they never filed for a variance from the parking requirements, because their discussions with Polensek and the building inspector led them to believe such an act would be hopeless.

Defendants also admitted that they have not returned the premises to their original condition as required by the lease. They did, however, offer to have it fixed up, but Shore never responded to their offer.

In the fall of 1993, defendants informed Shore that due to problems they were having, they would not be able to use the property as a tavern and no longer wanted the premises. Shore informed them he needed a letter from them stating their desire to get out of the lease, so that he would have authority to try to find another lessee for the premises.

On October 25, 1993, Shore drafted and sent a letter to defendants to sign. The letter was addressed to Shore and stated as follows:

"The purpose of this letter is to confirm our telephone conversation relating to the storeroom which we lease from Truetried Service Co. and which is located at 692–694 East 185 Street. As you know the lease on the premises expires on December 31, 1997.

"You are aware of the fact that we have not been able to transfer a liquor license to the premises as originally contemplated. For that reason we would

appreciate it if you would attempt to lease the premises to another lessee. We understand that we are obligated for the obligations on the lease for the balance of the lease term and for any costs that might be incurred in re-leasing the premises to an acceptable tenant but we do expect you to mitigate our damages as much as possible. Obviously, any rent collected from another tenant would be utilized to reduce any obligations that we might have.

"We will make arrangements to restore the premises to the condition in which we found them at the time of our first occupancy and we will vacate the premises promptly upon notification of another tenant."

It was signed by both defendant lessees. After signing the letter, the defendants quit the premises and paid no further rent, and they did not restore the property to its original condition.

Plaintiff filed suit in Cleveland Municipal Court on January 24, 1994 for past due rent and the cost of restoring the premises. The defendants counterclaimed for the rental paid from the inception of lease and the cost of renovations. The case exceeded the monetary jurisdiction of municipal court and was transferred to common pleas court pursuant to Civ.R. 13(J) and R.C. 1901.17. Following extensive discovery and denial of dispositive motions, the case proceeded to a bench trial on June 7, 1995.

At trial, plaintiff's agent Shore testified to past due and future rent of $84,690.10 plus $7,600 for damages done by defendants' renovations. The evidence from Cleveland's zoning administrator also revealed that defendants never filed the required applications for permits or licenses to commence business at the location or to obtain zoning variances for the parking problems. The defendants admitted that Councilman Polensek had expressed opposition to their plans to open "another bar on East 185th Street" and particularly did not want "adult" entertainment. Defendant Hager acknowledged that no attempt had been made to transfer a liquor permit to the leased premises.

On June 9, 1995, the trial court found generally for defendants on plaintiff's amended complaint and for plaintiff on defendants' counterclaim. On January 10, 1996, the trial court entered findings of fact and conclusions of law. It found that "at the time the lease was entered into, certain ordinances were in effect which would render continued performance impractical." As a matter of law, "the lease in question [was] void from its inception." No restitution was available on the counterclaim "due to impracticality of performance under the lease."

From these rulings a timely appeal by plaintiff lessor ensued. Defendants did not cross-appeal the judgment against their counterclaim.

Plaintiff's sole assignment of error states:

"The trial court erred in finding for the defendants-appellees on the plaintiff-appellant's amended complaint."

Our review of the trial court's findings of fact and conclusions of law is limited to determining whether the lower court properly applied the law to the facts and determined the facts consistent with the evidence. *Cleveland v. Assn. of Fire Fighters, Local 93* (1991), 73 Ohio App.3d 220, 226, 596 N.E.2d 1086. The trial court's findings will not be set aside unless the trial court manifestly disregarded the weight of the evidence or violated a principle of law in making its findings in arriving at its conclusions. *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 141, 36 O.O.2d 288, 292–293, 219 N.E.2d 221, 226.

We find that the trial court erred as a matter of law in finding that commercial impracticality was a bar to enforcement of the lease pursuant to its terms. We have to look no further than the defendants-appellees' brief to find the general principles applicable to this case. Attached thereto is *F & R Ent. v. Phillips* (May 21, 1990), Montgomery App. No. 11711, unreported, 1990 WL 68968, which states as follows at 2:

"In Ohio a lease for real property is a contract as well as a conveyance of an interest in that property. Consequently, the principles of construction applicable to contracts also apply to lease agreements. See 65 Ohio Jurisprudence 3d (1986), Landlord and Tenant, Sec. 103. As with a contract, a lease is construed most strongly against the party who prepared it. See 65 Ohio Jurisprudence 3d (1986), Landlord and Tenant, Sec. 108.

"In any dispute over a lease of real property, courts must endeavor to effectuate the intentions of the parties as nearly as is ascertainable from the language of the written agreement. *Stahl v. Van Vleck* (1895), 53 Ohio St. 136, 41 N.E. 35; *Coal Co. v. Mining Co.* (1884), 40 Ohio St. 559; *Weisant v. Follett* (1922), 17 Ohio App. 371. We cannot look to external sources of information to discern the parties' intentions. Neither may we give undue consideration to a particular portion of the lease to the exclusion of the whole of the lease. We will not construe a lease agreement to produce an absurd result. Rather, we must strive to give the lease that interpretation which reasonably carries out the intentions of the parties as those intentions are expressed within the four corners of the written agreement. See 65 Ohio Jurisprudence 3d (1986), Landlord and Tenant, Secs. 105, 107."

The critical issue in this case is where the risk of impracticality of using the premises lies in resolving the parking problems. The lease is silent on the subject. In such circumstances, the burden undertaken as to the proper use lies with the lessees, defendants herein. "[I]n the absence of fraud or statutory provisions to the contrary, ordinarily there is no implied covenant on the part of

the landlord that the premises are or will remain suitable for the purposes for which they are leased." 51C Corpus Juris Secundum (1968) 773, Landlord and Tenant, Section 304. This general proposition is consistent with Ohio law. See *F & R, supra*, at 4:

"Ohio has traditionally abided by the doctrine of *caveat emptor* with regard to leases of real property. In the absence of a specific agreement, fraud, or a great disparity in bargaining positions, the lessee of real property accepts that property as he finds it. *Fireman's Fund Insurance Co. v. BPS* (1985), 23 Ohio App.3d 56 [491 N.E.2d 365].

"The idea that a lessor of real property impliedly warrants that property is fit for a particular purpose attests to the extent to which Uniform Commercial Code concepts have intruded into other areas. While this intrusion has met with some success in the context of residential leases, where the lessor impliedly warrants that leased property is habitable, there is no authority in Ohio to suggest that a similar warranty arises in the context of commercial leases. The lessor of a commercial lease does not impliedly warrant that the premises are fit for the particular purpose the lessee has in mind. *Fireman's Fund Insurance Co., supra*, at syllabus 2. Only where the parties to a commercial lease make the condition of the property an expressed element of the lease agreement will the lessor be liable if the property proves unfit.

"Having examined the written agreement and reviewed the testimony, we find no evidence to suggest that the parties conditioned the lease of 1918–A and 1918–B Valley Street on either a warranty of fitness for a particular purpose or compliance with the Dayton Building Code. Appellant conceded as much on cross-examination when he stated that he understood that the lease placed the obligation for most repairs and improvements on him as lessee. (Tr. 130). Although Appellee expressly leased the property understanding that Appellant would use it for a truck repair shop, Appellee did not expressly lease the property as a truck repair shop.

"Absent evidence of an expressed condition or warranty within the commercial lease agreement, we must conclude that Appellant accepted the property as it was at the time the lease was entered and subject to the expressed provision that the cost of most repairs and improvements fell on the lessee. Appellant's third and fourth assignments of error are overruled." See, also, *Hoffman v. Fitness Circuit, Inc.* (April 2, 1992), Cuyahoga App. No. 60238, unreported, at 3, 1992 WL 67101: "The law in Ohio as to implied warranties of suitability in commercial leases is still *caveat emptor*, placing the responsibility squarely on the shoulders of the appellees [lessees] to make certain that the space they have chosen will be suitable for their purpose."

The conclusion that the risk of inability to use the premises for the intended purposes rests with lessee finds further support in *Goodman v. Sullivan* (1952), 94 Ohio App. 390, 52 O.O. 56, 114 N.E.2d 856. As in this case, in which the premises at issue were leased for use as a tavern and restaurant, in the *Goodman* case, the premises was to be used for the sale of "beer, wines, liquor and food." The court made the following observations, which are directly applicable:

"From the briefs we learn that the Board of Liquor Control had refused to permit the defendant to operate a place for the sale of beer, wine and liquor at the rented premises because of the proximity thereto of a public school building. It also appears that the lease carried no exception or condition that if the liquor permit was not granted to the defendant it should not be binding upon him. It is not contended, nor does it appear, that the premises could not have been used as a restaurant for the sale of food.

"The trial judge upon request of defendant made special findings of fact from which he drew his conclusions of law as follows:

" 'The terms of the lease must prevail. Defendant knew the Board of Liquor Control would have to approve the transfer of his license before he could sell liquor upon the demised premises. He failed to provide for that contingency in his lease. Plaintiff is entitled to judgment for his rent.'

"This succinct of law is supported by the findings of fact which, in part, are that defendant planning to move his liquor business from North High Street, in the City of Columbus, to 304 East Main Street in said city, on August 11, 1950, executed a lease with plaintiff for a period of five years; that the rental was to be $150 per month and the defendant was to use the rented premises for the sale of beer, wines, liquor and food; and that both parties knew, when the lease was signed that the use of the property for the sale of liquor was subject to an order of the Board of Liquor Control allowing or disallowing the transfer of defendant's liquor license to the demised premises.

"In the factual situation developed by the admissions in the pleadings and the findings of fact, the lessee could not elect to treat the lease as ineffective to require the payment of the rent therein provided.

"The legal question presented is considered in an annotation in 22 A.L.R., 821, to *Imbeschied, Trustee v. Lerner*, 241 Mass. 199, 135 N.E. 219, under the topic 'Effect of Interference by Law with Liquor Business on Lease of Property for that Purpose.' The annotator in his introductory remarks says:

" 'The cases upon this question fall into two main classes, depending upon whether or not the lease is solely for the transaction of the liquor business. If it is not, the courts are practically unanimous in holding that the prevention of such business by law does not affect the tenant's liability for rent. If the sole purpose

of the lease is that the leased property shall be devoted exclusively to the liquor business, there is a conflict of authority as to whether or not the liability for rent is affected by prevention of the business by law.'

"The annotation is well supported by cases cited from many states. It is evident that the lease here under consideration falls in the former of the two main classes discussed by the annotator and that the lessee may not be relieved from liability to pay rent.

"Appellees cite the case of *Montgomery v. Board of Education,* 102 Ohio St. 189, at page 193, 131 N.E. 497 of the opinion, 102 Ohio St. 189, 131 N.E. 497, 498, 15 A.L.R. 715, which though not a blue bottle case is helpful, as Judge Matthias enunciates a principle which is applicable:

" 'The contingency which here occurred was one which might well have been foreseen and provided against in the contract, but was not. The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract.' " *Id.* at 391–393, 52 O.O. at 56–57, 114 N.E.2d at 857–858.

The *Goodman* decision's applicability to this case is clear. Defendant's letter of October 25, 1993 acknowledged that "we have not been able to transfer a liquor license to the premises as originally contemplated. For that reason we would appreciate it if you would attempt to lease the premises to another lessee * * *." Whether the alleged impracticality concerns a liquor license transfer or off-street-parking requirements, at the time of the execution of the lease at issue in this case, both the plaintiff and the defendants obviously knew that the use of this property was subject to certain governmental restrictions and that licenses, permits, or variances would have to be obtained to conduct the contemplated enterprise. Nevertheless, nothing was included in the lease that allowed the defendants to escape the financial obligations to pay rent. See, also, *Jaffe v. Patterson Realty Co.* (App. 1955), 72 Ohio Law Abs. 147, 133 N.E.2d 655 for the proposition that the law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract when the lease of commercial property is involved; *Natl. Pumps Corp. v. Am. Pumps, Inc.* (1940), 66 Ohio App. 175, 178, 19 O.O. 488, 490, 32 N.E.2d 422, 424 ("This doctrine protects the integrity of contracts, * * * as against such contingencies, the party could have provided by his contract.").

The findings of fact and conclusions of law issued by the trial court are contrary to law. The court's reliance on impracticality in both its findings of fact and conclusions of law sections is not supported by the law, as the previous discussion discloses.

■ Even if the defendants should contend that the commercial lease was impossible to perform, this would not make the contract void *ab initio*. As this court stated in *Cleveland Indus. Square, Inc. v. Cleveland* (Mar. 9, 1995), Cuyahoga App. No. 67068, unreported at 3, 1995 WL 106149:

"Impossibility of performance occurs where after the contract is entered into, an unforseen event arises rendering impossible the performance of one of the contracting parties. See Calamari and Perillo, Contracts (1977), 476, Section 13. However, a contracting party will not be excused from performance merely because performance may prove difficult, dangerous or burdensome. *State ex rel. Jewett v. Sayre* (1914), 91 Ohio St. 85 [109 N.E. 636]." See, also, *Encore Mgt., Inc. v. Lakeview Realty, Inc.* (Mar. 31, 1994), Cuyahoga App. No. 64784, 65284, unreported, at 12, 1994 WL 110979.

The Ohio Supreme Court in *London & Lancashire Indemn. Co. of Am. v. Bd. of Comm. of Columbiana Cty.* (1923), 107 Ohio State 51, 64, 140 N.E. 672, 676, also held:

"While in certain instances, legal impossibility of performance is a defense to the performance of a contract, and while a condition may be implied by which the promisor may be relieved from his unqualified obligation to perform, such condition is implied only in those cases where performance has been rendered impossible without his fault and when the difficulties could not have reasonably been foreseen."

Since governmental approval of a liquor license transfer and parking difficulties of the zoning requirements were not unforeseeable events, the defendants could not succeed on this argument either.

The case cited by the trial court, *Austin Square, Inc. v. City Products Corp.* (1970), 24 Ohio App.2d 158, 53 O.O.2d 366, 265 N.E.2d 322, held that where the construction of a proposed shopping center was rendered legally impossible by injunction and the lessor did everything required of it to comply with the order of the court and to perform its contract with the lessee but was unsuccessful in its efforts, the lessor was entitled to cancellation of the lease even though the applicable zoning code was later amended so that the shopping center could be built. In *Austin Square*, a legal injunction made the lease impossible to perform. Furthermore, the party seeking judicial relief in the *Austin Square* case "did everything required of it to comply with [the] order of [the] court and to perform its contract with [the] lessee but was unsuccessful in its efforts."

The defendants herein did not exhaust efforts to obtain governmental approval or variance for their intended use. See *Jones v. Chagrin Falls* (May 25, 1995), Cuyahoga App. No. 67416, unreported, at 19, 1995 WL 322400 (the futility of seeking a zoning variance does not excuse the failure to make the effort).

■ Defendants' argument that the lease was rescinded is likewise without merit. Their October 25, 1993 letter states that the defendants would remain liable for the payment of the rent until the plaintiff was able to find a new lessee. This is not a rescission of the contract, as "the effect of a rescission is to extinguish the contract for all purposes." *Dlouhy v. Frymier* (1993), 92 Ohio App.3d 156, 161, 634 N.E.2d 649, 652.

■ The defendants' argument that the contract was voided by mutual mistake regarding the zoning requirements is also without merit. The court in *Hannah v. Pixley* (App. 1930), 9 Ohio Law Abs. 526, 527, held that mutual mistake is not a defense to voiding a lease when "the means of knowledge were easily accessible. A mistake which was the result of want of proper diligence is not sufficient." Lessees are presumed to have knowledge of the existing zoning ordinances when they enter into a lease. *Pioneer Trust & Sav. Bank v. Zonta* (1979), 74 Ill.App.3d 614, 30 Ill.Dec. 512, 393 N.E.2d 548, 551 ("rescission is not usually granted unless some change in the law occurs after the lease has been signed which thwarts the intended use of the premises. * * * The parties are presumed to know the law at the time the lease is made"); *Hoff v. Sander* (Mo.App.1973), 497 S.W.2d 651, 653 ("In the eyes of the law plaintiffs did know of the zoning restrictions and are therefore precluded from contending they, or defendant, were mistaken about the permissible use of the premises").

■ Finally, there is no merit to defendants' argument that the plaintiff's failure to repair the structural problems with the property, *i.e.*, leaking roof and fire damage to the basement joists, voided the contract pursuant to Sections 14 and 18 of the lease agreement. At trial, the defendants admitted that they never gave the landlord notice in writing, and no proof was offered of when the notice of the problems was given. Plaintiff's agent Shore testified that the roof was completed within a reasonable time, as "you have to wait until the weather is appropriate for it." Regarding the basement joists, Shore also testified that when he looked at the joists in response to defendants' complaints, he could not find anything wrong. Shore also testified that the complaints about the roof and fire damage were not made until "after they [defendants] had decided that they could not go forward with their original plan." On such conflicting evidence, we cannot determine when the notice was given and whether plaintiff's repair of the roof was timely or whether the joists needed repair. We cannot find that the contract was properly rescinded based on this state of the evidence.

Therefore, we hold that the trial court erroneously applied the law to the facts and that its judgment is not supported by the evidence.

Plaintiff's sole assignment of error is sustained.

The judgment is reversed, and the cause is remanded for determination of damages owed to plaintiff and whether the plaintiff mitigated the damages with reasonable diligence.

*Judgment reversed*
*and cause remanded.*

PATTON, J., concurs.

SARA J. HARPER, P.J., dissents.

SARA J. HARPER, Presiding Judge, dissenting.

I must respectfully dissent from the majority's decision to reverse the trial court's ruling. The majority contends that the trial court erred as a matter of law in finding that commercial impracticality was a bar to the enforcement of the commercial lease. The majority's conclusion rests on the accepted principle in Ohio that *caveat emptor* applies to all commercial leased premises and, therefore, there is no implied warranty that premises are suited for a particular purpose in a lease agreement. According to the majority, under these circumstances, the lessee carries the burden of resolving and obtaining the applicable permits for commercial lease premises.

However, upon an assessment of the record, I find that this court's review should turn on whether the trial court applied the appropriate rule of law given the *factual* circumstances of the case. Specifically, the critical issue is whether there was competent evidence supporting the court's finding that the commercial lease was legally impractical.

It is a seminal point of law that judgments of lower courts are presumed valid unless error affirmatively appears on the face of the record. *Makranczy v. Gelfand* (1924), 109 Ohio St. 325, 142 N.E. 688. The weight to be given evidence and the credibility of witnesses are primarily determinations for the fact finder. *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333. Where there exists competent and credible evidence in support of the trial court's findings and conclusions, deference to those findings must be given by the reviewing court. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

The doctrine of impossibility of performance is closely related to that of commercial impracticality in that both doctrines excuse performance due to circumstances beyond a party's control. In order to assert either defense, a party must show "that an unforeseeable event occurred, that the non-occurrence of the event was a basic assumption underlying the agreement, and that the event

was impracticable." *Settles v. Invesco Real Estate Partnership* (Dec. 4, 1989), Butler App. No. CA89–03–047, unreported, 1989 WL 145968, citing *Roth Steel Products v. Sharon Steel Corp.* (C.A.6, 1983), 705 F.2d 134, 149.

For example, when a lease restricts leased premises to a single use, which is later found to be illegal due to a zoning ordinance, the lease is considered to be for an illegal purpose and therefore is null and void from its inception. *Weizman v. Chapin* (App. 1948), 51 Ohio Law Abs. 26, 79 N.E.2d 668. Thus, an entity is not required to take unreasonable steps in seeking to render an impractical contract legally practical. *Austin Square, Inc. v. City Products Corp.* (1970), 24 Ohio App.2d 158, 53 O.O.2d 366, 265 N.E.2d 322.

In *Weizman,* the lessor limited the use of leased property in the city of Cleveland to the manufacture of screw machine products. However, a Cleveland zoning ordinance prohibited the use of the particular leased premises for the manufacture of screw machine products. At trial, the parties disputed the lessee's obligation under the terms of the lease when the lessor made material misrepresentations to the lessee with respect to the legality of the restricted use. The trial court's ruling in favor of the lessor was reversed by this court. This court found that the issue critical to the dispute was whether the use of leased premises was legal in light of the zoning ordinance.

The facts in the present case fall squarely within the rule of law articulated by *Weizman.* First, the Cleveland Zoning Code subjects all commercial property to municipal parking ordinances. Specifically, Section 349.05 of the Zoning Code prohibits the use of leasehold property where there is insufficient off-street parking. Second, with respect to the off-street-parking requirement, the relevant leased property fell below the requirements set forth in Section 349.05 of the Zoning Code. Here, the owner of the parking lot directly across the street from the leased property did not give permission to the lessees or their bar/restaurant patrons for use of the parking lot. Moreover, the owners of two other parking lots, possibly within the four-hundred-foot limitation imposed by Section 349.05, did not give permission to the lessees or their bar/restaurant patrons for use of the parking lots.

The majority relies on *Goodman v. Sullivan* (1952), 94 Ohio App. 390, 114 N.E.2d 856, and *F & R Ent. v. Phillips* (May 21, 1990), Montgomery App. No. 11711, unreported, 1990 WL 68968, for the proposition that a lessee cannot be excused from performance under the terms of a commercial lease because there is no implied warranty by the lessor that commercial property is suited for a particular purpose. Thus, a lessee's inability to legally operate pursuant to a lease has no effect on the lessee's obligations under the lease terms. I am cognizant that *Goodman* stands for the proposition of law that a lessee cannot be relieved from liability when commercial leased property is subject to government

zoning restrictions and the lease does not contain a contingency provision with regard to whether the lease is binding subject to the government zoning restriction. However, I do not find *Goodman* factually on point.

In *Goodman,* commercial property was leased for the purpose of beer, wine, liquor, and food sales. The signed lease agreement provided that the use of the property for the sale of liquor was subject to an order of the Board of Liquor Control that either allowed or disallowed the transfer of the lessee's license. The lessee's lease did not have contingency clause with regard to the Board of Liquor Control's decision to grant the transfer of the liquor permit or with respect to the lessee's liability under a binding lease. Subsequently, the Board of Liquor Control denied the transfer of the license because of the leased property's proximity to a school. The appeal concerned the lessee's obligation for rent pursuant to the lease. The appellate court ruled in favor of the lessor.

In comparison to *Goodman,* the dispute in the case *sub judice* does not turn on the lessees' obligation to perform under the terms of the lease, particularly when the lessees could have obtained, but failed to obtain, the required permits for the leased property. Rather, the dispute turns on the lessees' potentially illegal conduct had they performed under the terms of the lease agreement. Given the lessees' inability to satisfy the parking requirements imposed by the Zoning Code, the lessees' inability to obtain the required permits is immaterial. Thus, *Goodman* sheds little light on whether the lease was properly deemed impractical given the facts and circumstances of the case herein.

The majority also relies on *F & R Ent. v. Phillips,* but I find that *F & R Ent.* is not directly on point either. In *F & R Enterprises,* the parties executed a commercial lease agreement for the rental of property. Shortly after executing the lease, appellant discovered that the building was not suitable for its intended purpose, *i.e.,* a truck repair shop, because the city of Dayton required ventilation systems for that type of business. The parties disputed who should pay the cost of installing the ventilation systems and the rent arrears. On appeal, appellant argued that the lease was void because the leased premises did not meet the warranty of fitness for the purposes for which the leased property was intended. Moreover, the lease contained an escape clause that excused the lessee from performance under the terms of commercial leases. The Montgomery County Court of Appeals found that the evidence did not demonstrate that the lessee would use the leased property for a truck repair shop, specifically, the lessee did not expressly lease the property as a truck repair shop.

There are two factors that distinguish *F & R Ent.,* in my mind, from the facts of the case *sub judice.* First, the lessees herein expressly leased the property for a single purpose, *i.e.,* use as a tavern and restaurant. Second, the lessees are not arguing that the leased property did not meet the warranty of fitness for the

purposes for which the leased property was intended. The lessees are arguing that performance under the terms of the lease constitutes illegal conduct given the zoning restriction.

Similarly, *Hoffman v. Fitness Circuit, Inc.* (Apr. 2, 1992) Cuyahoga App. No. 60238, unreported, 1992 WL 67101, is favorably cited by the majority for the proposition that a commercial lease cannot be rescinded when the leased property was not expressly warranted for suitability of the premises for use for aerobics instruction classes.

In *Hoffman,* the lessee signed a commercial lease agreement to let property for use for aerobics instruction. The lease contained a contingency provision that excused the lessee from performance under the terms of the lease if the leased property was rendered unsuitable due to zoning ordinances. The lessee sought to rescind the lease agreement on the ground that the leased property was not structurally suitable for aerobics instruction. Upon review of the record, this court rejected the lessee's contention. This court noted that the lease agreement permitted the lessee to forgo performance under the lease if the leased property was rendered unsuitable as a result of noncompliance with zoning requirements. However, this court went on to hold that the lessee could not be excused from performance under the terms of the lease agreement on the ground that the leased property was not suitable for reasons not related to zoning requirements.

The lessees herein, unlike the lessee in *Hoffman,* do not contest the suitability of the leased property. The lessees argue that the leased property does not comply with the zoning ordinance's parking requirements for a tavern and restaurant. The lessees' performance under the lease would have constituted illegal conduct.

Cleveland's zoning ordinance imposes parking requirements for commercial property relative to use as a tavern and restaurant, and (2) the leased property did not meet the zoning ordinance requirements relative to the off-street-parking requirements for a bar and restaurant. Thus, the lease agreement should have been deemed impractical and rendered void. *Weizman,* and there was competent evidence to support the trial court's finding that the circumstances rendered the lease agreement impractical. *Myers.*

For the foregoing reasons, I would affirm the trial court's ruling.