OPINION
{¶ 1} This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Nelson Sand Gravel, Inc., appeals from a final judgment of the Conneaut Municipal Court dismissing its complaint and awarding appellee, Milton A. Ring, Jr., $15,000.
 {¶ 2} The record shows that on May 4, 1999, appellant and appellee entered into a written contract for the purchase of an estimated 35,000 cubic yards of gravel. The agreement provided that appellant would mine a five acre tract of land owned by appellee and remove the gravel from the property. When the operation was completed, appellant would then "either dig a pond or grade off (using existing materials) and seed the area which will be determined at a later date depending on the land conditions." Pursuant to the terms of the contract, appellant was required to make a $15,000 payment "upon commencement of gravel removal[,]" with two additional $10,000 payments to be paid at a later date.[1]
 {¶ 3} After making the initial $15,000 payment, appellant began clearing the land in preparation for the removal of the gravel. While doing so, however, appellant discovered underground springs in the area to be excavated. Appellant determined that the underground springs constituted wetlands, which, according to appellant, would have made "it impossible to obtain a necessary permit from the [United States Army] Corps of Engineers to mine the gravel." As a result, appellant suspended operations before removing any gravel from appellee's property.
 {¶ 4} When appellant asked appellee to return the $15,000 advance payment, appellee refused to do so. Accordingly, the company filed a complaint against appellee in the Conneaut Municipal Court seeking the return of the money. In its complaint, appellant alleged that because of "environmental and permit requirements," the purpose of the contract had been frustrated and was impossible to perform. Furthermore, appellant claimed that if appellee were to retain the $15,000 he would be unjustly enriched at the company's expense.
 {¶ 5} Appellee filed an answer to the complaint that included a counterclaim. The matter then proceeded to trial on June 1, 2001. During the proceedings, appellant's president, Tom Nelson ("Nelson") testified about the terms of the contract and the discovery of the underground springs. With respect to the springs, Nelson told the trial court that it was his "experience if you have any kind of hydric soils you'll be denied permits." As a result, he did not believe it would be feasible to mine the gravel from appellee's property.
 {¶ 6} On cross-examination, however, Nelson testified that the company had received a letter from the Ohio Department of Natural Resources informing him that because the soil conditions" may be indicative of wetland soils[,]" appellant's permit application was being forwarded to the United States Army Corps of Engineers ("the Corps") for further review. (Emphasis added.) Nelson also testified that appellant subsequently received a letter from the Corps which stated that after reviewing the application, the findings suggested that the project was located in an area regulated by the Corps and that a permit may be required for some or all of the operation. The Corps advised appellant to "either submit an application for a Department of the Army permit, or contact [the] office for advice on procedures to be followed before proceeding with the project." Nelson admitted not only that the letter from the Corps did not preclude mining on the property, but also that appellant never pursued the issue further or applied for the necessary permits.
 {¶ 7} On July 12, 2001, the trial court issued a decision dismissing appellant's complaint and awarding appellee $15,000 on his counterclaim.[2] From this decision, appellant filed a timely notice of appeal with this court asserting the following assignments of error for our review:
 {¶ 8} "[1.] The court erred in dismissing plaintiff-appellant's complaint with prejudice.
 {¶ 9} "[2.] The court erred in awarding the defendant-appellee judgment on his counterclaim for the sum of $15,000 representing the balance due the defendant-appellee under the written contract within the monetary jurisdiction of the court."
 {¶ 10} Under its first assignment of error, appellant argues that the trial court's judgment dismissing its complaint was against the manifest weight of the evidence. In particular, appellant claims that once the underground springs were discovered, the contract became impossible to perform because, according to the company, it would be unable to obtain the necessary permits. Appellant also argues that even if it could have obtained the permits and actually breached the contract when it discontinued its mining operation, appellee has been unjustly enriched through retaining the initial $15,000 payment.
 {¶ 11} In Ohio, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact. Shemo v. Mayfield Hts.,88 Ohio St.3d 7, 10, 2000-Ohio-258; Gerijo, Inc. v. Fairfield,70 Ohio St.3d 223, 226, 1994-Ohio-432.
 {¶ 12} Impossibility of performance occurs where after a contract is entered into, an unforeseen event arises, rendering performance by one or more of the contracting parties impossible. Truetried Serv. Co. v.Hager (1997), 118 Ohio App.3d 78, 87. A contracting parties' nonperformance, however, will not be excused merely because performance would have been difficult, dangerous, or burdensome. Id.
 {¶ 13} After carefully considering the record, we conclude that the trial court `s judgment concerning impossibility of performance is not against the manifest weight of the evidence. Despite what Nelson may have believed about the nature of the land to be excavated, there is absolutely no evidence that it contained protected wetlands that would have prevented the removal of the gravel. Although both the Ohio Department of Natural Resources and the Corps informed appellant that there may be wetlands, further testing was required before a final determination could be made. Appellant, for whatever reason, never took the next step in the process. Moreover, there is no documentation or testimony from the Corps indicating that appellant could not have obtained the necessary permits. As a result, when appellant suspended mining operations, the company breached the parties' contract.
 {¶ 14} Appellant next argues that if appellee is allowed to retain the $15,000 already paid, he would be unjustly enriched at the company's expense. According to appellant, it made a good faith determination that obtaining the necessary permits to mine the gravel would be impossible because of environmental factors affecting the property. As such, appellant contends that it would be unconscionable for appellee to keep both the $15,000 and the unmined gravel. We disagree.
 {¶ 15} Generally speaking, the equitable remedy of unjust enrichment is not available where the parties have an express or implied-in-fact contract assigning their respective rights and obligations. Wild-Fire, Inc. v. Laughlin (Mar. 3, 2001), 2d Dist. No. 2000 CA 51, 2001 WL 227395, at 3. See, also, Ulmann v. May (1947),147 Ohio St. 468, paragraph four of the syllabus. As a result, because the parties in this case have a written contract, appellant cannot recover under a theory based on unjust enrichment. Appellant's first assignment of error has no merit.
 {¶ 16} Under assignment of error two, appellant maintains that the trial court's judgment awarding appellee $15,000 in damages is against the manifest weight of the evidence. Specifically, appellant argues that even if it breached the parties' contract, it is not liable for the full contract price. Rather, appellant submits that it should only be required to pay the damages actually incurred by appellee.
 {¶ 17} In a breach of contract action, the award of money damages is designed to place an aggrieved party in the same position that he or she would have been had the contract not been breached. Buckley v.Ollila (Mar. 3, 2000), 11th Dist. No. 98-T-0177, 2000 Ohio App. LEXIS 787, at 7-8. That is, damages are to be compensatory in nature and not punitive. Id. at 8. A party should not be placed in a better position than if the contract had not been breached. Brads v. First Baptist Church ofGermantown (1993), 89 Ohio App.3d 328.
 {¶ 18} The party seeking damages in a breach of contract action bears the burden of proving the nature and extent of his or her damages in order to be entitled to compensation. Akro-Plastics v. DrakeIndustries (1996), 115 Ohio App.3d 221, 226. As a result, an injured party cannot recover damages for breach of contract in excess of the amount that is established by the evidence with reasonable certainty.Cordy v. D G Pools, Inc. (Dec. 26, 1997), 11th Dist. No. 97-T-0079, 1997 Ohio App. LEXIS 5849, at 5.
 {¶ 19} In the case at bar, appellant still owed appellee $20,000 under the clear terms of the contract. Accordingly, the trial court awarded appellee $15,000, which represented the balance due up to the trial court's monetary jurisdiction. Thus, the trial court's judgment is supported by some competent, credible evidence. See, e.g., 22810Lakeshore Corp. v. XAM, Inc. (Oct. 8, 1998), 8th Dist. No. 73367, 1998 WL 703307, at 8 (holding that "[g]enerally, a party injured by a breach of contract is entitled to his expectation interest, or `his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed."). Appellant's second assignment of error is not well-taken.
 {¶ 20} Based on the foregoing analysis, appellant's two assignments of error have no merit. The judgment of the trial court, therefore, is affirmed.
DONALD R. FORD, J., DIANE V. GRENDELL, J., concur.
[1] The contract also specified that if more than 35,000 cubic yards of gravel were removed, appellant would pay appellee one dollar per cubic yard. However, if less than 35,000 cubic yards were removed, an adjustment would be made in the final payment.
[2] Because the trial court's decision was based on the presented evidence as opposed to the sufficiency of appellant's complaint, the court should have entered judgment in favor of appellee rather than simply dismiss the comlaint with prejudice.