DECISION AND JUDGMENT ENTRY
{¶ 1} Bobby Mitchell and Kathryn Mitchell appeal the trial court's judgment directing a verdict in favor of Tommy Thompson and Keith Searles. They assert that they presented evidence upon which reasonable minds could disagree as to whether they established their claims for relief for (1) wrongful eviction, (2) conversion, (3) bailment, (4) replevin, (5) unjust enrichment, and (6) breach of contract. Because this case was tried before a judge, not a jury, the "reasonable minds" test is not the appropriate standard. Instead, Civ.R. 41(B)(2) provides the proper standard and allows *Page 2 
the trial court to actually review the evidence to determine whether appellants set forth their case by the applicable standard of proof. Then, under Civ.R. 41(B)(2), our standard of review is whether the trial court's dismissal is against the manifest weight of the evidence. In this case, the trial court's dismissal of appellants' claims is not against the manifest weight of the evidence. Therefore, we overrule appellants' five assignments of error and affirm the court's judgment.
 {¶ 2} On May 13, 2004, appellants filed a complaint against appellees, Tommy Thompson and Keith Searles. Appellants alleged: (1) they entered into an oral lease agreement with Searles to rent property upon which to place a double-wide mobile home; (2) they orally contracted with Thompson to move the home from West Virginia to Searles' lot; (3) on December 23, 2002, Thompson moved one-half of the home onto Searles' lot; (4) in April of 2003, Thompson removed the one-half mobile home and a storage shed containing appellants' personal property from the lot after the Village of Middleport determined that the placement of the mobile home on the lot violated the zoning ordinances. Appellants asserted the following claims for relief: (1) Searles wrongfully evicted them from the property; (2) Searles and Thompson converted appellants' property; (3) Thompson violated his bailment duties by failing to protect appellants' property upon its removal; *Page 3 
(4) Thompson was required to return the personal property contained in the storage shed under a replevin action; (5) Searles has been unjustly enriched by improvements appellants made to his lot; and (6) Searles breached the lease agreement.
 {¶ 3} Appellees subsequently filed a counterclaim. They alleged that appellants failed to arrange to have the property removed once the Village advised that the home must be removed and requested the court to reimburse them for expenses associated with removing the property.
 {¶ 4} On April 14, 2006, the trial court held a bench trial. Searles testified that he orally agreed to rent the property to appellants, and that they paid him $300 rent for one month. After appellants had placed one-half of the double-wide mobile home on the property, the Village of Middleport issued a stop work order. Appellants applied for a variance to allow the mobile home to be placed upon the lot, but the Village denied the request for a variance. Searles stated that the Village put a notice on his property that was addressed to the property owner, ordering the property owner to remove the mobile home. He talked to Mr. Mitchell before removing the mobile home and Mr. Mitchell told Searles that "they wasn't [sic] doing nothing with it, they would let the bank have it back." Searles then stated to Mr. Mitchell, "if you're not going to do anything we need to move it. If you're *Page 4 
not going to move it I'll have it removed. And they said that was fine." Searles stated that appellants knew that he was going to have it removed.
 {¶ 5} Mrs. Mitchell testified that on December 26, 2002, the building inspector issued a stop work order to Mr. Thompson. She contacted Searles and advised him that they would need a variance to place the double-wide mobile home on the property. Mrs. Mitchell stated that in April of 2003, they received a notice from the Village that they needed to move the house off the property by May 10, 2003. They did not do anything to have the house removed from the lot, other than contacting several attorneys to try to figure out what to do. She claimed that Searles did not tell them that they needed to move the home and that he never notified appellants that he was going to remove the mobile home. Mrs. Mitchell claimed that she did not know the home was being moved until her niece saw Mr. Thompson's truck hooked up to it and informed her.
 {¶ 6} Mrs. Mitchell testified that she and her husband prepared the lot for the mobile home, and she assumed it was her obligation to do so. She did not expect Searles to expend any money to prepare the lot.
 {¶ 7} Mr. Mitchell stated that he asked Thompson to return their property after he removed it from the lot. He admitted that Thompson offered to return the property, for a hauling fee. *Page 5 
 {¶ 8} After appellants finished presenting their case, appellees moved for "a directed verdict." The court granted it as to all claims except the bailment claim relating to the storage shed. The court found that appellees removed the home due to the order from the Village. The court found the conversion claim meritless because Thompson stated he would return the property if appellants paid a fee for moving it. The court stated: "You can't * * * leave your property somewhere or have someone tell you to move your property and expect somebody else to move it for nothing." The court found the replevin claim meritless because Thompson offered to return the property in exchange for a moving fee. Regarding the unjust enrichment claim, the court stated that appellants voluntarily improved the property. The court explained: "If you volunteer to do something without some kind of an agreement as to who's going to do what and who's going to pay what then essentially what you've done being a volunteer is that you have made a gift of that." Regarding the breach of contract claim, the court found that the contract was unenforceable due to the zoning violation. The court stated: "You can't take property and put it somewhere and expect it to be left there if you're violating some kind of a law or an ordinance by any governmental or appropriate governmental agency." *Page 6 
 {¶ 9} Appellees then presented their case. The court subsequently determined that the bailment between appellants and Thompson was a gratuitous, involuntary bailment and that Thompson's duty was "not to go out and tear everything up." The court ordered Thompson to return the storage shed to appellants at his own expense. The court found that "any other claims" between the parties amounted to zero.
 {¶ 10} Appellants timely appealed the court's judgment and raise the following assignments of error.
 {¶ 11} I. THE TRIAL COURT ERRED IN FINDING THAT THE RENTAL AGREEMENT BETWEEN THE PLAINTIFFS AND DEFENDANT SEARLES WAS VOID AND IN RELIEVING HIM FROM HIS LEGAL OBLIGATIONS.
 {¶ 12} II. THE TRIAL COURT'S FINDING THAT THE DEFENDANTS WERE ORDERED BY THE VILLAGE TO MOVE THE HOME OR SUFFER A $50 PER DAY FINE IS ERRONEOUS AND UNSUPPORTED BY THE EVIDENCE.
 {¶ 13} III. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT AGAINST THE PLAINTIFFS ON THEIR CLAIM AGAINST DEFENDANT SEARLES FOR UNJUST ENRICHMENT.
 {¶ 14} IV. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT AGAINST THE PLAINTIFFS ON THEIR CLAIMS FOR CONVERSION.
 {¶ 15} V. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST THE PLAINTIFFS ON THEIR BAILMENT CLAIM AGAINST DEFENDANT THOMPSON. *Page 7 
 I {¶ 16} Appellants' assignments of error all challenge the propriety of the trial court's decision directing a verdict in appellees' favor, pursuant to Civ.R. 50(A)(4). However, because the parties tried their case before a judge, not a jury, the directed verdict standard contained in Civ.R. 50(A)(4) is not appropriate in this case. Whitestone Co. v.Stittsworth, Franklin App. No. 06AP-371, 2007-Ohio-233, at ¶ 11;Johnson v. Tansky Sawmill Toyota, Inc. (1994), 95 Ohio App.3d 164, 167,642 N.E.2d 9; Rohr v. Schafer (June 28, 2001), Franklin App. No. 00AP-1059. Instead, in a non-jury trial action, Civ.R. 41(B)(2) sets forth the appropriate standard. Whitestone, at ¶ 11. The distinction between a Civ.R. 41(B)(2) dismissal and a Civ.R. 50(A)(4) directed verdict is crucial, because the two rules contain different standards that the trial court and the appellate court apply. Whitestone, at ¶ 11; Johnson; see, also, Cooper v. Smith, 155 Ohio App.3d 218,2003-Ohio-6083, 800 NE.2d 372, at ¶ 8.
 {¶ 17} In considering a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the non-moving party and may grant the motion only if it finds that reasonable minds could come to but one conclusion, which is adverse to the non-moving party. Civ.R. 50(A)(4); Fenley v. Athens Cty. Genealogical Chapter (May 28, 1998), *Page 8 
Athens App. No. 97CA36. Under Civ.R. 50, the court is not the trier of fact and does not weigh the evidence. Whitestone, at ¶ 12;Johnson, supra. A motion for directed verdict tests the legal sufficiency of the evidence to go to the jury and therefore presents a question of law that appellate courts review independently.Whitestone, at ¶ 12; Fenley, supra.
 {¶ 18} In contrast, under Civ.R. 41(B)(2), the trial court does not view the evidence in a light most favorable to the plaintiff.Whitestone, at ¶ 13. Civ.R. 41(B)(2) provides that, "in an action tried by the court without a jury, * * * the defendant * * * may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Under Civ.R. 41(B)(2), the trial court acts as the trier of fact and may weigh the evidence to determine whether the plaintiff has proved its case under the applicable burden of proof. Whitestone, at ¶ 13; Scrivner v. Lore (Apr. 22, 1999), Scioto App. No. 98CA2568 (stating that under Civ.R. 41(B)(2), the trial court does not view the evidence in a light most favorable to the plaintiff but rather actually determines whether plaintiffs have proven the necessary facts by the appropriate evidentiary standard). Unlike the de novo standard of review that applies to a Civ.R. 50(A)(4) directed verdict, a court of appeals may set aside a trial court's decision under Civ.R. 41(B)(2) "only if it is erroneous as a matter of law or against the manifest weight of the *Page 9 
evidence." Osborne, Inc. v. HR Purchasing, Inc., Lake App. No. 2003-L-051, 2004-Ohio-3503, at ¶ 9; see, also, D.A.N. Joint Venture III,L.P. v. Armstrong, Lake App. No. 2006-L-089, 2007-Ohio-898. Thus, our standard of review under Civ.R. 41(B)(2) is less stringent than the one we apply when reviewing a Civ.R. 50(A)(4) directed verdict.
 {¶ 19} An appellate court will not reverse a trial court's decision as being against the manifest weight of the evidence as long as some competent, credible evidence supports it. Shemo v. Mayfield Hts. (2000),88 Ohio St.3d 7, 10, 722 NE.2d 1018; Vogel v. Wells (1991),57 Ohio St.3d 91, 96, 566 NE.2d 154; CE. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Additionally, appellate courts presume that a trial court's factual findings are correct because the trial court is best able to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use its observations in weighing the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 NE.2d 1273. Thus, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 NE.2d 212, paragraph one of the syllabus. *Page 10 
 {¶ 20} No prejudice results "if a trial court erroneously applies the Civ.R. 50(A) standard for directed verdict instead of the standard for involuntary dismissal under Civ.R. 41(B)(2) because the directed verdict standard is much more rigorous than the involuntary dismissal standard. * * * Satisfaction of the Civ.R. 50(A) standard implies satisfaction of the Civ.R. 41(B)(2) standard. * * *." Fenley, supra. Accordingly, we consider the propriety of the trial court's dismissal pursuant to Civ.R. 41(B)(2). Thus, appellants' argument that we should review this appeal under the de novo standard of review is not accurate.
 II {¶ 21} In their first assignment of error, appellants assert that the trial court erred by finding that the rental agreement was void and relieved Searles of his legal obligations. They contend that: (1) the evidence shows that they lawfully entered the premises with a building permit and a rental agreement; (2) the evidence is insufficient to show that appellees were under order to remove appellants' property from the premises; (3) the Village order did not render the rental agreement void; (4) appellees did not assert illegality or invalidity as a defense in their pleadings; and (5) the trial court erred by upholding the removal of their mobile home without notice to vacate. *Page 11 
 {¶ 22} In the case at bar, the trial court determined that the Village's order to remove the mobile home rendered the lease agreement unenforceable. This finding essentially constituted a finding that the lease was impossible to perform.
 {¶ 23} "Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties."Shlton v. Perry Local School Dist. Bd. of Educ. Lake App. No. 2001-L-140, 2002-Ohio-6702, at ¶ 26; see, also, London Lancashire Indemn. Co. ofAm. v. Bd. of Comm. of Columbiana Cty. (1923), 107 Ohio State 51, 64,140 N.E. 672, 676; Truetned Service Co. v. Hager (1997),118 Ohio App.3d 78, 87, 691 N.E.2d 1112. "Absent contrary contractual terms, either party can often avoid an agreement when governmental activity renders its performance impossible or illegal." Glickman v. Coakley (1984),22 Ohio App.3d 49, 52, 488 N.E.2d 906. "Since the courts will not enforce an agreement to perform an illegal act, the parties presumably condition their contract on the legality of its performance." Id. When contractual impossibility occurs, the parties need not perform their respective contractual obligations and will not recover because of a breach.Wolfcale v. Marsico, Mahoning App. No. 01CA205, *Page 12 
2002-Ohio-6902, at ¶ 37, citing Massillon Savings Loan v. ImperialFinance (1926), 114 Ohio St. 523, 151 N.E.2d 645; and Glickman, supra.
 {¶ 24} In this case, some evidence supports the trial court's decision that the lease was unenforceable because it was impossible to perform. Some evidence supports the court's finding that the Village ordered the mobile home removed from the property and would not grant a variance to allow its placement upon the property. Searles testified that the Village placed a notice on his property ordering the mobile home removed. Thus, because appellants could not legally lease the land to house their double-wide mobile home, the lease was unenforceable. Because the lease was unenforceable, appellants cannot maintain a wrongful eviction or breach of lease agreement claim against Searles. Consequently, the trial court did not err by dismissing these two claims.
 {¶ 25} Appellants nevertheless assert that because appellees failed to raise impossibility of performance or illegality as an affirmative defense, they waived the argument.
 {¶ 26} Civ.R. 8(C) provides that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively * * * illegality * * * or any other matter constituting an avoidance or affirmative defense." Illegality or invalidity of a contract is an affirmative defense that must be set forth in the *Page 13 
pleadings or it is waived. Arthur Young Co. v. Kelly (1993),88 Ohio App.3d 343, 348, 623 N.E.2d 1303; McCabe/Marra Co. v. Dover (1995),100 Ohio App.3d 139, 147, 652 N.E.2d 236.
 {¶ 27} However, a party may raise an affirmative defense in an amended pleading. Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6, 465 N.E.2d 377. Civ.R. 15(A) states that after the time has expired for amending a pleading as a matter of course, a party may amend his pleading only by leave of court or written consent of the adverse party. Furthermore, Civ.R. 15(B) allows a party to amend the pleadings to conform to the evidence presented at trial. That rule states:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
Thus, "the failure to plead an affirmative defense of the type listed in Civ.R. 8(C) only results in waiver where the affirmative defense is not tried with *Page 14 
the express or implied consent of the parties and/or where prejudice to the opposing party results." Blevins v. Sorrell (1990),68 Ohio App.3d 665, 671-72, 589 N.E.2d 438, citing Hoover, 12 Ohio St.3d at 5.
 {¶ 28} In this case, appellees did not explicitly raise impossibility or illegality as an affirmative defense. However, they asserted in their counterclaim that the Village refused to allow the mobile home to be placed upon the lot, and the parties presented evidence at trial regarding the Village's refusal to permit the mobile home to be placed upon the lot. Although inartfully presented, the issue of impossibility of performance or illegality was sufficiently presented at trial. Therefore, the parties impliedly consented to try the issue, and it matters not that appellees failed to explicitly raise the issue in any of the pleadings.
 {¶ 29} Accordingly, we overrule appellants' first assignment of error.
 III {¶ 30} In their second assignment of error, appellants claim that the evidence does not show that the village ordered appellees to remove the one-half of the double-wide mobile home from the premises or suffer a $50 per day fine.
 {¶ 31} Searles testified that the Village placed a notice on his property that was addressed to the property owner that ordered the mobile home *Page 15 
removed. Some evidence exists that the Village would impose a $50 per day fine if the home was not removed. Although the evidence is not unequivocal as to whether Searles would have to pay the $50 per day fine, our standard of review requires us to affirm if even "some" evidence supports the finding. We thus disagree with appellants' argument and overrule their second assignment of error.
 IV {¶ 32} In their third assignment of error, appellants assert that the trial court erred by dismissing their unjust enrichment claim. They contend that they presented evidence that Searles received the benefit of the land being cleared of underbrush, trees trimmed, electric pole erected, underground water and sewer lines put in place, and reinforced concrete footers installed.
 {¶ 33} Unjust enrichment entitles a party to the reasonable value of the benefit conferred on the other party. See Girard v. LeatherworksPtshp., Trumbull App. No. 2004-T-10, 2005-Ohio-4779, at ¶ 41; BlueChip_Pavement Maintenance, Inc. v. Ryan's Family Steakhouses, Inc., Clermont App. No. CA2003-09-72, 2004-Ohio-3357, at ¶ 18; Schaste Metals,Inc. v. Tech Heating Air Conditioning, Inc. (Aug. 7, 1997), Cuyahoga App. No. 71589. Unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another." Liberty Mut.Ins. Co. v. *Page 16 Indus. Comm. (1988), 40 Ohio St.3d 109, 111, 532 N.E.2d 124; see, also,Dixon v. Smith (1997), 119 Ohio App.3d 308, 317, 695 N.E.2d 284. "In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: `(1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment.'" Wheeler v. Martin, Washington App. No. 04CA15, 2004-Ohio-6936, at ¶ 24, quoting Pine v. Price, Columbiana App. No. 01-CO-46, 2002-Ohio-5223; see, also, Dixon, supra;Hatten v. Shaw (May 15, 2000), Lawrence App. No. 99CA30.
 {¶ 34} Here, the trial court determined that appellants and Searles did not have an agreement regarding improvements to the land. The court determined that appellants gratuitously improved the land. Under these circumstances, the court apparently found that it would not be unjust for Searles to retain the benefits. Because some evidence supports the court's finding, we will not overturn its decision on this issue.
 {¶ 35} Accordingly, we overrule appellants' third assignment of error.
 V {¶ 36} In their fourth assignment of error, the Mitchells contend that the trial court erred by dismissing their conversion claim. *Page 17 
 {¶ 37} The elements of a conversion claim are: (1) a plaintiffs ownership or right to possession in property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiffs property rights; and (3) damages. Cremeans v. Robbins (Jun. 12, 2000), Ross App. No. 99CA2520.
 {¶ 38} In the case at bar, some evidence supports the court's decision that appellees did not convert appellants' property. The trial court found that appellees contacted appellants and requested appellants to arrange to remove the one-half mobile home from the property. Searles testified that he contacted appellants and asked them to remove the property. Because appellants did not respond to Searles' request, appellees then removed the property due to the Village order requiring the property to be removed. The trial court apparently decided that appellees' actions were not wrongful. Its decision is not against the manifest weight of the evidence.
 {¶ 39} Accordingly, we overrule appellants' fourth assignment of error.
 VI {¶ 40} In their fifth assignment of error, appellants claim that the trial court erred by dismissing their bailment claim. *Page 18 
 {¶ 41} Initially, we note that the trial court did not entirely dismiss appellants' bailment claim. Instead, the court let the bailment claim relating to the storage shed survive appellees' "directed verdict" motion. The court then essentially found in appellants' favor on the bailment claim by ordering Thompson to return the property. To the extent the court dismissed appellants' bailment claim relating to the mobile home, we review its judgment under the manifest weight of the evidence standard set forth, supra.
 {¶ 42} "A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when the special purpose is accomplished or retained until the bailor reclaims the property. Bailment involves the transfer of a possessory interest only and not an ownership interest in the property. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit of both." Wanko v. Downie Productions, Inc. (Aug. 24, 2000), Franklin App. No. 99AP-1047 (citations omitted). In order to establish a cause of action in contract under a bailment theory, the bailor must prove: (1) a contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to deliver the bailed property undamaged at the termination of the bailment. *Page 19 Vandeventer v. Vandeventer (1999), 132 Ohio App.3d 762, 768,726 N.E.2d 534.
 {¶ 43} Here, to the extent the court ruled against appellants on their bailment claim, some evidence exists that Thompson requested appellants to retrieve their property, and that appellants, for whatever reason, did not. Thus, because some evidence exists that Thompson was not at fault for retaining the property, the court could properly dismiss appellants' bailment claim.
 {¶ 44} Accordingly, based upon the foregoing reasons, we overrule appellants' fifth assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment and Opinion as to Assignment of Error II, Concurs in Judgment Only as to Assignments of Error III, IV, V, and Dissents as to Assignment of Error I. *Page 1